# EXHIBIT A



| | INVESTMENT MANAGEMENT LIABILITY SOLUTIONS DECLARATIONS |
|---|---|

**NOTICE:**

**THIS IS A CLAIMS MADE POLICY AND, SUBJECT TO ITS PROVISIONS, APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD.  CLAIMS MUST BE REPORTED TO THE COMPANY IN ACCORDANCE WITH SECTION VI.  DEFENSE COSTS ARE WITHIN THE LIMIT OF LIABILITY. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Terms in bold face type have the special meaning.  See the definitions section of this Policy.

| NAMED INSURED AND ADDRESS | | PRODUCER |
|---|---|---|
| Item 1.<br><br>Attn: | Standard General L.P.<br>767 Fifth Ave<br>12th Floor<br>New York, NY  10153 | Frank Crystal & Co., Inc<br>Brian  Rozynski<br>32 Old Slip<br>New York, NY  10005 |
| **CUSTOMER NUMBER** | | **INSURER** |
| 242837 | | Continental Casualty Company |
| **POLICY NUMBER** | | 333 S. Wabash Avenue<br>Chicago, IL 60604 |
| 425207388 | | |

Item 2.         **Policy Period**: 9/1/2014  to  9/1/2015


                12:00 a.m. local time at the address stated in Item 1.

Item 3.         Policy Premium  $98,398


Item 4.         Notices to Insurer:

                **Claims:**                             All other notices:
                CNA – Claims Reporting              CNA Global Specialty Lines
                P.O Box 8317
                Chicago, IL 60680-8317
                Email: SpecialtyNewLoss@cna.com
                Fax Number: 866-773-7504


Item 5.         Extended Reporting Period:
                a.   Period: 365 Days
                b.   Premium: 125% of **Annual Policy Premium**

Item 6.         Limit of Liability (Inclusive of **Defense Costs**)
                a.  Aggregate Limit of Liability
                    $5,000,000 for all **Loss** from all **Claims** for which this Policy provides coverage

© CNA  All Rights Reserved.



| | INVESTMENT MANAGEMENT LIABILITY SOLUTIONS DECLARATIONS |

   b.  Any Coverage Part for which a limit of liability is shown below is "Included":

      $5,000,000   for GSL-2285-XX  Investment Adviser Professional Liability Coverage Part

      $5,000,000   for GSL-2286-XX  Investment Adviser Management Liability Coverage Part

      $N/A        for GSL-2288-XX  Mutual Fund Management and Professional Liability Coverage Part

      $5,000,000   for GSL-2287-XX  Hedge Fund Management and Professional Liability Coverage Part

   c.  **Shareholder Derivative Demand Investigation Costs** Sublimit of Liability (exclusive of **Defense Costs** and subject to the Aggregate Limit of Liability): $200,000

Item 7.     Retentions

   Retention applicable to:

   Investment Adviser Professional Liability Coverage Part: $200,000

   Investment Adviser Management Liability Coverage Part: $150,000

   Mutual Fund Management and Professional Liability Coverage Part: $  N/A

   Hedge Fund Management and Professional Liability Coverage Part: $200,000

© CNA  All Rights Reserved.



| | INVESTMENT MANAGEMENT LIABILITY SOLUTIONS DECLARATIONS |
|---|---|

Item 8.    Prior or Pending Date: 9/1/2010

Item 9.    Percentage of the **Named Insured's** consolidated assets under management: 20%

Item 10.   Endorsements forming a part of this Policy at issuance:

| | | |
|---|---|---|
| GSL3908XX | Ed. 01/08 | Notice of Terrorism Coverage - Notice Disclosure Of Premium |
| GSL3842XX | Ed. 01/08 | Coverage And Cap On Losses From Certified Acts Of Terrorism |
| CNA71647XX | Ed. 12/12 | Amendatory Endorsement (For Use With Investment Management Liability Solutions Policy) |
| CNA74048XX | Ed. 06/13 | Amend Claims By Insureds Exclusion (Creditors Committee Carveback) |
| CNA72260XX | Ed. 12/12 | Variable Definition Of Responsible Person Endorsement |
| CNA75641XX | Ed. 08/13 | Amend Illegal Profits/Deliberate Acts Exclusion Endorsement (Variable Responsible Persons) |
| CNA71021XX | Ed. 09/12 | Schedule Of Hedge Funds |
| CNA73290XX | Ed. 03/13 | Delete Pollution Exclusion Endorsement |
| CNA74119XX | Ed. 06/13 | Amend Extended Reporting Period Election Period Endorsement |
| CNA73969XX | Ed. 05/13 | Amend Claims By Insureds Endorsement (Carveback For Hedge **Fund** Executive Liability Based Upon Independent Opinion) |
| CNA74107XX | Ed. 06/13 | Amend No Action Against Insurer Endorsement |
| CNA72440XX | Ed. 01/13 | Private Company Endorsement |
| G-145125-A | Ed. 08/03 | Policyholder Notice-Economic And Trade Sanctions Condition |
| G-145184-A | Ed. 06/03 | Economic And Trade Sanctions Condition |
| CNA72709NYFTZ | Ed. 04/13 | New York Free Trade Zone Endorsement |
| GSL11893NY | Ed. 03/09 | Revision To Notice Requirements - Claims Made Forms |
| CNA73046XX | Ed. 02/13 | Outside Directorship Liability Endorsement For Profit Entity (Double Excess) |
| CNA71767XX | Ed. 11/12 | Cost Of Corrections Liability Endorsement |
| CNA75866XX | Ed. 08/13 | Amend Definition of Hedge Fund to Include Affiliated Funds Endorsement |
| CNA76734XX | Ed. 10/13 | Amend Prior Notice Exclusion |

These Declarations, along with the completed and signed **Application**, the Policy, and any written endorsements attached shall constitute the contract between the **Insureds** and the Insurer.

Authorized Representative :

Date: 10/08/2014

© CNA  All Rights Reserved.



INVESTMENT MANAGEMENT LIABILITY SOLUTIONS

GENERAL TERMS AND CONDITIONS

**THIS POLICY APPLIES ONLY TO ANY CLAIM FIRST MADE AGAINST ANY INSURED DURING THE POLICY PERIOD AND REPORTED TO THE INSURER IN ACCORDANCE WITH SECTION VI. NOTICE OF CLAIM/ CIRCUMSTANCE AND INTERRELATED CLAIM CLAUSE. DEFENSE COSTS ARE WITHIN THE LIMITS OF LIABILITY. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**Terms in bold face type have special meaning. See the definitions sections of this Policy.**

The Insurer and the **Insureds** agree as follows, in consideration of the payment of the premium and in reliance upon the **Application** furnished to the Insurer designated in the Declarations, a stock insurance corporation, hereafter called the "Insurer."

I. **TERMS AND CONDITIONS**

Except for the General Terms & Conditions or unless stated to the contrary in any Coverage Part, the terms and conditions of each Coverage Part of this policy apply only to that Coverage Part and shall not apply to any other Coverage Part of this policy. Any defined term referenced in the General Terms & Conditions but defined in a Coverage Part shall, for purposes of coverage under that Coverage Part, have the meaning set forth in that Coverage Part. If any provision in the General Terms & Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Part, the terms and conditions of such Coverage Part shall control for purposes of coverage under that Coverage Part.

II. **DEFINITIONS**

The following defined words shall have the same meaning throughout this policy, whether expressed in the singular or plural. Wherever appearing in bold print in this policy:

**Administrator** means any entity engaged to perform administrative duties for a **Fund** pursuant to a written contract defining the scope of such duties and the compensation to be paid therefore.

**Application** means all signed applications, any attachments to such applications, other materials submitted therewith or incorporated therein, and any other documents submitted in connection with the underwriting of this policy by the Insurer, or any other policy underwritten by the Insurer or its affiliates of which this policy is a direct or indirect renewal or replacement. **Application** also means any public documents filed by an **Insured Entity** with the Securities and Exchange Commission ("SEC") within twelve months prior to the inception of this policy.

**Claim** means:

1. a written demand for monetary damage or non-monetary relief (including a request to toll or waive the statute of limitations or for injunctive or declaratory relief);

2. a civil or criminal proceeding, any alternative dispute resolution proceeding or an **Extradition**; or

3. a formal regulatory proceeding (civil, criminal or administrative) against or formal investigation of an **Insured**, including when such **Insured** is identified in a written Wells or other notice from the SEC or a similar federal, state, local or foreign government authority that describes actual or alleged violations of securities or other laws by such **Insured**;

against an **Insured** for a **Wrongful Act**, including any appeal therefrom.

In addition, other than with respect to the Investment Adviser Professional Liability Coverage Part, a **Claim** includes a **Shareholder Derivative Demand**.

A **Claim** shall be deemed first made on the following dates:

a. with respect to a written demand, on any **Insured's** receipt of notice of such demand;

b. with respect to any proceeding, on the date of service upon or other receipt by an **Insured** of a complaint in any such proceeding, or on the date of the return of an indictment, information or similar document against an **Insured** in any such criminal proceeding;

c. with respect to a formal investigation as set forth in paragraph 3. above, upon:

© CNA  All Rights Reserved.



    i.   an **Insured** being identified by name in an order of investigation, subpoena, Wells Notice or target letter (within the meaning of Title 9, §11.151 of the United States Attorney's Manual), as someone against whom a civil, criminal, administrative or regulatory proceeding may be brought; or

    ii.   the arrest and detainment or incarceration for more than 24 hours of an **Executive** by any law enforcement authority in a **Foreign Jurisdiction**;

  d.  with respect to a **Shareholder Derivative Demand**, a **Claim** shall be deemed made on the date such **Shareholder Derivative Demand** is received by an **Insured Entity**.

**Defense Costs** means reasonable and necessary fees, costs and expenses, consented to by the Insurer (such consent not to be unreasonably withheld) and incurred by an **Insured** in the investigation, adjustment, defense or appeal of any covered **Claim** and, solely with respect to an **Extradition**, any **Extradition Costs**. It also includes premium for appeal bonds, attachment bonds or similar bonds arising out of a covered judgment; however, the Insurer has no obligation to provide such bonds. **Defense Costs** shall not include **Shareholder Derivative Demand Investigation Costs**, salaries, wages, fees, overhead or benefit expenses associated with the directors, officers, and **Employees** of an **Insured Entity**.

**Distributor** means any entity that is engaged as the principal underwriter for a **Fund**, whether acting as principal or agent of the **Fund** or as an intermediary in connection with the distribution or sale of securities in the **Fund**, pursuant to a written contract defining the scope of such services and the compensation to be paid therefor.

**Domestic Partner** means any person qualifying as such under any federal, state or local laws or under an **Insured Entity's** employee benefit plans.

**Employee** means any past, present or future full-time, part-time, seasonal or temporary employee of an **Insured Entity** other than a **Service Provider**. **Employee** also means any natural persons who have contracted to perform work for an **Insured Entity** as independent contractors so long as such natural persons are acting on behalf of and at the specific direction of the **Insured Entity** and the **Insured Entity** indemnifies such natural person in the same manner as it indemnifies other **Employees** of the **Insured Entity**. **Employee** does not include any **Executive**.

**ERISA or any Similar Act** means the Employee Retirement Income Security Act of 1974, as amended, or any similar common or statutory law of the United States, Canada or their states, territories or provinces or any **Foreign Jurisdiction**.

**Executive** means any natural person who is a past, present or future:

  1.  duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture, member of the board of managers of a limited liability company, general partner of an entity structured as a limited partnership, or partnership manager of a general partnership;

  2.  In-House General Counsel or Risk Manager (or equivalent position) of the **Named Insured**; or

  3.  any position equivalent to those listed under paragraphs 1. or 2. above.

**Extradition** means a process by which one country surrenders an **Insured Person** to another country for prosecution, incarceration or to answer any criminal accusation where such **Insured Person** is the subject of:

  1.  an official request for an order of **Extradition**; or

  2.  a warrant for arrest where such warrant is an element of **Extradition**.

**Extradition Costs** means reasonable and necessary fees, costs and expenses incurred in connection with a **Claim** against an **Insured Person** for a **Wrongful Act** with the Insurer's prior written consent (such consent not to be unreasonably withheld) to challenge, resist or defend against any request for or order of **Extradition**, or any appeal of any order of **Extradition**.

**Financial Insolvency** means, with respect to an **Insured Entity**:

  1.  the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Insured Entity**, or such **Insured Entity** becoming a debtor in possession; and

  2.  the inability of such **Insured Entity**, financially or under applicable law, to advance **Defense Costs** or indemnify any **Insured Person** for **Loss**.

---

© CNA  All Rights Reserved.



**Foreign Jurisdiction** means any jurisdiction, other than the United States or any of its territories or possessions.

**Foreign Policy** means the standard directors and officers' liability policy or professional liability policy (including all mandatory endorsements, if any) approved by the Insurer or any of its affiliates to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this policy. If more than one such policy exists, then **Foreign Policy** means the standard basic policy form most recently offered for sale for comparable risks by the Insurer or any of its affiliates in that **Foreign Jurisdiction**. The term **Foreign Policy** shall not include any partnership management, pension trust or professional liability coverage.

**Fund** means a **Mutual Fund** or **Hedge Fund**.

**Inadequate Consideration Claim** means a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate.

**Hedge Fund** means any hedge fund named in the Schedule of **Hedge Funds** Endorsement to the policy and its:

1.  entity general partner or entity managing general partner if organized as a partnership;

2.  entity managing member if organized as a limited liability company;

including any such organizations as a debtor-in-possession under United States bankruptcy law or an equivalent status of the law of any other country.

**Insured** means any **Insured Person** and any **Insured Entity**.

**Insured Entity** shall have the meaning assigned to that term under any Coverage Part designated as "Included" in Item 6.b.of the Declarations and attached hereto.

**Insured Person** shall have the meaning assigned to that term under any Coverage Part designated as "Included" in Item 6.b. of the Declarations and attached hereto.

**Interrelated Wrongful Acts** means any **Wrongful Acts** that are logically or causally connected by reason of any common fact, circumstance, situation, transaction or event.

**Investment Adviser** means the **Named Insured** and any **Subsidiary**, including such company as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.

**Loss** means those amounts that any **Insured** is legally obligated to pay as awards, settlements, judgments (including any award of pre-judgment and post-judgment interest on a covered judgment), **Defense Costs** and **Sox 304/Dodd Frank 954 Costs**, unless stated to the contrary in any Coverage Part.

Notwithstanding anything to the contrary below, **Loss** shall include (subject always to this policy's other terms, conditions and limitations):

1.  punitive, exemplary and multiplied damages except with respect to a **Wrongful Employment Practice Claim** as set forth in paragraph vi. below;

2.  penalties assessed against any **Insured Person** pursuant to the Foreign Corrupt Practices Act, 15 U.S.C. Sec. 78dd-2(g)(2)(B); and

3.  solely with respect to the Investment Advisor Management Liability Coverage Part (if designated as "Included" in Item 6.b. of the Declarations and attached hereto), awards, settlements or judgments for which any **Insured** is liable pursuant to Section 11, 12 or 15 of the Securities Act of 1933, as amended.

Enforceability of paragraphs 1., 2. and 3. above shall be governed by such applicable law that most favors coverage for **Loss**.

However, **Loss** (other than **Defense Costs**) shall not include:

i.  fines, penalties or taxes imposed by law;

ii.  matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed;

iii.  any amount for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order;

© CNA  All Rights Reserved.



iv. the payment of any dividends or other distributions of corporate profits of the **Insured Entity** to any shareholder of the **Insured Entity**;

v. any amount which constitutes disgorgement, including restitution;

vi. solely with respect to a **Wrongful Employment Practices Claim**, punitive and exemplary damages and the multiplied portion of any multiplied award; or

vii. compensation earned by the claimant in the course of employment but unpaid by any **Insured**, including salary, wages, commissions, bonus or incentive compensation.

In the event of an **Inadequate Consideration Claim**, **Loss** with respect to such **Claim** shall not include any amount of any awards, settlements or judgments representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection with such **Claim**.

**Management Control** means:

1. owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company, the general partners of a limited partnership or the partnership managers of a general partnership;

2. having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an **Insured Entity**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company, the general partners of a limited partnership or the partnership managers of a general partnership.

**Mutual Fund** means:

1. any investment company registered under the Investment Company Act of 1940 that exists as of the effective date of the policy and is named in the Schedule of **Mutual Funds** Endorsement to the policy;

2. any series or portfolios of such investment company as defined in paragraph 1. above, existing as of the effective date of the policy or created during the **Policy Period**;

3. subject to the provisions of Section **XVI.**, any investment company registered under the Investment Company Act of 1940, including any series or portfolios of such investment company, created or sponsored by the **Named Insured** after the effective date of the policy; and

4. any investment company or trust that was once registered under the Investment Company Act of 1940, as amended, and was owned or managed by the **Named Insured**, but has been terminated, merged, sold or dissolved, including any series or portfolios of such investment company, but only for **Wrongful Acts** that occurred while such **Mutual Fund** was owned or managed by the **Named Insured**.

**Named Insured** means the company named in the Declarations as such, including such company as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.

**Non-Indemnifiable Loss** means **Loss** that an **Insured Entity** fails or refuses to indemnify an **Insured Person** because:

1. of **Financial Insolvency**; or

2. it is not permitted to indemnify pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Insured Entity**.

**Policy Period** means the period from the effective date of this policy to the policy expiration date stated in Item 2 of the Declarations, or its earlier cancellation date.

**Pollutants** means any substance exhibiting hazardous characteristics as is or may be defined or identified on any list of hazardous substances issued by the United States Environmental Protection Agency or any state, local or foreign counterpart. **Pollutants** also means, without limitation, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste (including materials to be recycled, reconditioned or reclaimed), as well as any air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos, or asbestos products or any noise.

© CNA  All Rights Reserved.



**Responsible Person** means any past, present or future Chairman, President, Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, In-House General Counsel or Chief Compliance Officer, or equivalent in any jurisdiction or organization.

**Securities Claim** means a **Claim**, other than an administrative or regulatory proceeding against or investigation of an **Insured Entity**, made against any **Insured** and:

1. brought by:

    a. any person or entity and alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Insured Entity**; or

    b. a security holder of an **Insured Entity** with respect to such security holder's interest in securities of such **Insured Entity**; or

2. brought derivatively on behalf of an **Insured Entity** by a security holder of such **Insured Entity**.

**Service Provider** means any:

1. **Administrator**, **Distributor** or **Transfer Agent** of a **Fund** that is a **Subsidiary**; or

2. **Insured Person** of any such **Administrator**, **Distributor** or **Transfer Agent** of a **Fund**, but solely with respect of his or her capacity as an **Executive** or **Employee** of such **Administrator**, **Distributor** or **Transfer Agent** of a **Fund**.

**Shareholder Derivative Demand** means any written demand by one or more shareholders of an **Insured Entity** upon the boards of directors (or equivalent management body) of such **Insured Entity** to:

1. commence an investigation of; or

2. bring a civil proceeding in a court of law against;

any **Executive** for a **Wrongful Act**.

**Shareholder Derivative Demand Investigation Costs** mean, after receipt by an **Insured** of a **Shareholder Derivative Demand**, reasonable and necessary fees, costs and expenses incurred by:

1. an **Insured Entity**; or

2. the board of directors, or any committee of the board of directors, or any equivalent management body, on behalf of an **Insured Entity**;

in connection with any investigation or evaluation conducted by such **Insured Entity**, or on behalf of such **Insured Entity** by such board of directors, committee of the board of directors or equivalent management body, as to how such **Insured Entity** should respond. **Shareholder Derivative Demand Investigation Costs** do not include salaries, wages, fees, overhead or benefit expenses associated with the directors, officers, and **Employees** of any **Insured Entity**; or any costs, fees or expenses incurred in a **Securities Claim**.

**Shareholder Derivative Suit** means a lawsuit purportedly brought derivatively on behalf of an **Insured Entity** by a shareholder of such **Insured Entity** against an **Executive** of such **Insured Entity**.

**SOX 304/Dodd-Frank 954 Costs** means the reasonable and necessary fees, costs and expenses consented to by the Insurer (including the premium or origination fee for a loan or bond) and incurred by a Chief Executive Officer or Chief Financial Officer of the **Insured Entity** solely to the extent such amounts are incurred in connection with a covered **Claim** and solely to facilitate the return of amounts required to be repaid by such Chief Executive Officer or Chief Financial Officer pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Act of 2010. **SOX 304/Dodd Frank 954 Costs** do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such Chief Executive Officer or Chief Financial Officer pursuant to Section 304(a) of the Sarbanes-Oxley Act or Section 954 of the Dodd-Frank Act.

**Subsidiary** means:

1. any entity (other than a partnership) in which the **Named Insured** has **Management Control** directly or indirectly through one or more other **Subsidiaries**:

    on or before the effective date of this policy; or

© CNA  All Rights Reserved.



after the effective date of this policy by reason of being created or acquired by an **Insured Entity** after such date, if and to the extent coverage with respect to the entity is afforded pursuant to Section **XVI.**; or

2. any entity exempt from federal income taxation and sponsored exclusively by an **Insured Entity**.

**Takeover** means:

1. the acquisition by another entity or person, or group of entities or persons acting in concert, of:

    a. the ownership or control of voting stock of the **Named Insured** resulting in such entity, person or group owning or controlling more than 50% of the voting stock of the **Named Insured**; or

    b. assets of the **Named Insured** resulting in such entity, person or group owning more than 50% of the total consolidated assets of the **Named Insured** as of the date of the **Named Insured's** most recent audited consolidated financial statement prior to such acquisition;

2. the merger of the **Named Insured** into another entity such that the **Named Insured** is not the surviving entity; or

3. the consolidation of the **Named Insured** with another entity.

**Transfer Agent** means any entity that records the original issuance, redemption or transfer of shares of a **Fund**, for such **Fund**, when an issue, redemption or transfer of shares of the **Fund** occurs, pursuant to a written contract defining the scope of such services and the compensation to be paid therefor.

**Whistleblower Activity** means the kind of activity described in Title 18, Section 1514A, paragraph (a) (1) and (2) under the Whistleblower Protection for Employees of Publicly Traded Companies provision of the Sarbanes-Oxley Act of 2002, regardless of whether or not such activity is done by an employee protected under such statute or any similar federal, state, local or foreign statute.

**Wrongful Act** shall have the meaning assigned to that term under any Coverage Part designated as "Included" in Item 6.b. of the Declarations and attached hereto.

III.  **GENERAL POLICY EXCLUSIONS**

The Insurer shall not be liable to pay that part of **Loss** under this policy in connection with any **Claim**:

1. **Contractual Liability**

    based upon or arising out of:

    a. an **Insured's** alleged liability under any oral or written contract or agreement, including but not limited to express warranties or guarantees; or

    b. the liability of others an **Insured** assumes under any oral or written contract or agreement.

    However, this exclusion shall not apply to:

    i. an **Insured's** liability that exists in the absence of such contract or agreement; or

    ii. any **Claim** against an **Insured** by a client or customer of the **Insured**, if and to the extent that the **Claim** alleges a breach of contractual obligations in the rendering of or failure to render **Professional Services**;

2. **Illegal Profits/Deliberate Acts**

    based upon or arising out of:

    a. the gaining of any profit, remuneration or financial advantage to which any **Insured** was not legally entitled; or

    b. the committing of any deliberate fraudulent or deliberate criminal act by any **Insured**,

    if established in a final non-appealable adjudication in any action or proceeding, other than an action or proceeding initiated by the Insurer to determine coverage under this policy.

    Paragraph a. does not apply to that portion of **Loss** attributable to violations of Section 11, 12 or 15 of the Securities Act of 1933 in a **Securities Claim**, and

    Solely with respect to paragraph b. above, any act or omission that is treated as a criminal violation in a **Foreign Jurisdiction** but that is not treated as a criminal violation in the United States of America, the

© CNA  All Rights Reserved.



imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred.

For purposes of determining the applicability of this exclusion:

i.   any **Wrongful Act** of an **Insured Person** shall not be imputed to any other **Insured Person**; and

ii.  only the **Wrongful Acts** of any **Responsible Person** of an **Insured Entity** shall be imputed to the **Insured Entity**;

3. **Pollution**

based upon or arising out of:

a.   any nuclear reaction, radiation or contamination, or any actual, alleged or threatened discharge, release, escape, or disposal of, or exposure to, **Pollutants**;

b.   any request, direction or order that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of **Pollutants** or nuclear reaction, radiation or contamination, or any voluntary decision to do so;

c.   or any actual or alleged property damage, or bodily injury, sickness, disease or death of any person, or financial loss to the **Insured Entity**, its security holders, or its creditors resulting from any of the aforementioned matters.

However, this exclusion shall not apply to any **Non-Indemnifiable Loss** incurred by an **Insured Person**;

4. **Prior Notice**

based upon or arising out of any **Wrongful Act** or any matter, fact, circumstance, situation, transaction, or event which has been the subject of any notice given by an **Insured** under any policy of which this policy is a direct or indirect renewal or replacement;

5. **Prior or Pending**

based upon or arising out of or attributable to essentially the same facts, circumstances, situations, transactions or events underlying or alleged in any litigation, any administrative or regulatory proceeding, any investigation or any alternative dispute resolution proceeding against an **Insured** that was pending on or prior to the Prior or Pending Date set forth in Item 8 of the Declarations;

6. **Violation of Law**

a.   for any actual or alleged violation of:

i.   the responsibilities, obligations or duties imposed upon fiduciaries by **ERISA or any Similar Act** in connection with the **Insured Entity's** in-house pension, employee benefit or welfare plans;

ii.  the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), as amended or any other similar federal, state or local statutory or regulatory law or common law anywhere in the world;

iii. any law governing workers' compensation, unemployment insurance, social security, disability benefits or any other similar federal, state or local statutory or regulatory law or common law anywhere in the world;

iv.  the Occupational Safety and Health Act of 1970 (OSHA), as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing workplace safety and health;

v.   the Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988), as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing an employer's obligation to notify or bargain with others in advance of any facility closing or mass layoff;

vi.  the National Labor Relations Act, as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing employees' rights and the employers duties with respect to unions, bargaining, strikes, boycotts, picketing, lockouts or collective activities; and,

© CNA  All Rights Reserved.



b.  based upon or arising out of any actual or alleged violation of: the Fair Labor Standards Act (except the Equal Pay Act), as amended, or any other federal, state or local statutory law or common law anywhere in the world governing wage, hour and payroll policies.

However, this exclusion does not apply to any **Claim** otherwise covered under the Investment Adviser Management Liability Coverage Part (if designated as "Included" in Item 6.b. of the Declarations and attached hereto), or to the extent such **Claim** alleges retaliation (including any **Claim** alleging retaliation in violation of Section 510 of ERISA) or wrongful dismissal or discharge or termination of employment whether actual or constructive, because a claimant's exercise of a right pursuant to any such laws.

## IV.   LIMIT OF LIABILITY/RETENTION/PRESUMPTIVE INDEMNIFICATION

### 1.   Limits of Liability

#### a.   Each Coverage Part Aggregate Limit of Liability

The amount stated in Item 6.b. of the Declarations as the Coverage Part Aggregate Limit of Liability with respect to each Coverage Part shall be the aggregate limit of liability of the Insurer under such Coverage Part for all **Loss** arising out of all **Claims** first made against the **Insureds** during the **Policy Period** and the Extended Reporting Period, if applicable. In the event more than one Coverage Part applies to **Loss** arising from a **Claim**, the Limit of Liability available for such **Claim** shall not exceed the largest applicable Coverage Part Aggregate Limit of Liability.

#### Policy Level Aggregate Limit of Liability

Each Coverage Part Aggregate Limit of Liability shall be part of, and not in addition to, the amount stated in Item 6.a. of the Declarations as the policy Aggregate Limit of Liability for all **Loss** arising out of all **Claims** first made against the **Insureds** during the **Policy Period** and the Extended Reporting Period (if applicable).

#### c.   Shareholder Derivative Demand Investigation Costs Sublimit of Liability

The **Shareholder Derivative Demand Investigation Costs** Sublimit of Liability set forth in Item 6.c. of the Declarations is the aggregate limit of the Insurer's liability for all **Shareholder Derivative Demand Investigation Costs** arising out of all **Shareholder Derivative Demands**. The **Shareholder Derivative Demand Investigation Costs** Sublimit of Liability shall be part of and not in addition to the aggregate limit of liability stated in the Declarations.

#### d.   **Defense Costs** are part of **Loss** and as such are subject to the Limit of Liability for **Loss** for each Coverage Part and the policy.

### 2.   Retention

The Insurer shall only be liable for the amount of **Loss** arising from each **Claim** that is in excess of the applicable Retention amount stated in Item 7 of the Declarations for the applicable Coverage Part. A single Retention shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or **Interrelated Wrongful Acts**. The Retention shall be uninsured. The Insurer will have no obligation to pay all or any portion of any applicable Retention. In the event that more than one Retention applies to **Loss** arising from a **Claim**, the total Retention amount applied shall not exceed the largest of such applicable Retentions.

No Retention applies with respect to:

a.  **Non-Indemnifiable Loss** except in connection with a **Wrongful Employment Practices Claim**; or

b.  a **Shareholder Derivative Demand** covered under any **Shareholder Derivative Demand Investigation Costs** Insuring Agreement.

**Shareholder Derivative Demand Investigation Costs** do not erode the applicable retention.

### 3.   Presumptive Indemnification

a.  If for any reason an **Insured Entity** fails or refuses to advance, pay or indemnify covered **Loss** of an **Insured Person** within the applicable Retention, if any, then the Insurer shall advance such amounts on behalf of such **Insured Person** until either an **Insured Entity** has agreed to make such payments, or the Retention has been satisfied. In no event shall any such advancement by the Insurer relieve any **Insured**

© CNA  All Rights Reserved.



**Entity** of any duty it may have to provide advancement, payment or indemnification to any **Insured Person**.

Advancement, payment or indemnification of an **Insured Person** by an **Insured Entity** shall only be deemed failed or refused to the extent such advancement, payment or indemnification is not provided, or agreed to be provided, or acknowledged by and collectible from an **Insured Entity**. Any payment or advancement by the Insurer within an applicable Retention shall apply towards the exhaustion of the Limits of Liability.

"Fails" or "failed", as used herein, means an **Insured Person** requested in writing that an **Insured Entity** advance, pay or indemnify an **Insured Person** for **Loss** and such advancement, payment or indemnification has not been provided by, agreed to be provided by or acknowledged as an obligation by such **Insured Entity** within sixty (60) days of such request. "Refuses" or "refused", as used herein, means that an **Insured Entity** gave written notice to an **Insured Person** that it would not honor such **Insured Person's** request to pay, advance or indemnify for **Loss**.

b.   The **Insured Entity** agrees to indemnify the **Insured Persons** or to advance **Defense Costs** to the fullest extent permitted by law. If the Insurer pays any amount as set forth in paragraph a. above, then the **Insured Entity** shall reimburse the Insurer for such amounts, which shall become immediately due and payable as a direct obligation of the **Insured Entity** to the Insurer. The failure of an **Insured Entity** to perform any of its obligations to indemnify an **Insured Person** or advance **Defense Costs** under this policy shall not impair the rights of an **Insured Person** under this policy.

## V.   SETTLEMENT/DEFENSE OF CLAIMS/ ALLOCATION OF LOSS/ADVANCEMENT OF DEFENSE COSTS

### 1.   Settlement/Insurer's Consent

No **Insured** shall incur any **Defense Costs** without the Insurer's prior written consent, such consent not to be unreasonably withheld. The Insurer shall not be liable for **Defense Costs** incurred by an **Insured** to the extent the **Defense Costs** are without the Insurer's prior written consent, such consent not to be unreasonably withheld. The Insurer shall not be liable for **Loss** incurred by an **Insured** to the extent the **Loss** results from such **Insured** admitting liability, consenting to any judgment, agreeing to any settlement or making any settlement offer without the Insurer's prior written consent. The **Insureds** agree that they shall not knowingly take any action while a **Claim** is pending that increases the Insurer's exposure for **Loss** under this policy.

Notwithstanding the above, if any **Insured** is able to settle any **Claim** for an aggregate amount, including **Defense Costs**, not exceeding the Retention applicable to such **Claim**, then the Insurer's consent shall not be required for the settlement of such **Claims**.

### 2.   Defense of Claims

The **Insureds** and not the Insurer have the duty to defend **Claims**. The Insurer shall be entitled to effectively associate in the defense and the negotiation of any settlement of any **Claim** that involves or appears reasonably likely to involve the Insurer.

### 3.   Allocation of Loss

If a **Claim** made against an **Insured** includes both covered and uncovered matters or if a **Claim** is made against **Insureds** who are extended coverage therefor and others (including an **Insured Entity**) who are not extended coverage therefor, the **Insureds** agree that there must be an allocation between insured and uninsured loss. The **Insureds** and the Insurer shall exert their best efforts to agree upon a fair and proper allocation, based on the relative legal and financial exposures, between insured **Loss** and uninsured loss.

### 4.   Conditions for Advancement of Defense Costs

The Insurer, on behalf of the **Insureds**, shall advance **Defense Costs** no later than ninety (90) days after the receipt by the Insurer of bills detailing the amounts owed in excess of the applicable Retention. However, advancement of **Defense Costs** shall be subject to the following conditions:

a.   if the **Insureds** and the Insurer agree on an allocation of insured and uninsured **Defense Costs**, the Insurer shall advance the amount of insured **Defense Costs**;

b.   if the **Insureds** and the Insurer cannot, after exerting their best efforts as set forth in paragraph 3. above, agree on an allocation of insured and uninsured **Defense Costs**, the Insurer then shall advance the

© CNA  All Rights Reserved.



percentage of **Defense Costs** that the Insurer states to be fair and proper until a different allocation is agreed upon or determined pursuant to the provisions of this policy and applicable law;

c.   the **Insureds** agree to repay the Insurer any **Defense Costs** finally established not to be insured; and

d.   any allocation or advancement of **Defense Costs** shall not apply to or create any presumption with respect to the allocation of **Loss**.

## VI.   NOTICE OF CLAIM/ CIRCUMSTANCE AND INTERRELATED CLAIM CLAUSE

1.   **Notice of Claim**

The **Insureds** shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of a **Claim** as soon as practicable after a **Responsible Person** first becomes aware of such **Claim**, but in no event later than sixty (60) days after the end of the **Policy Period** or the Extended Reporting Period, if applicable. Failure to give such notice as soon as reasonably practicable shall not invalidate coverage of such **Claim** unless the failure to provide timely notice has prejudiced the Insurer or unless the notice is provided after the expiration of the **Policy Period** or any Extended Reporting Period (if applicable).

2.   **Notice of Circumstance**

If, during the **Policy Period**, or Extended Reporting Period, as applicable, a **Responsible Person** first becomes aware of any facts or circumstances that may reasonably be expected to give rise to a **Claim** and during such period give written notice to the Insurer of:

a.   the **Wrongful Act** allegations anticipated as the basis of the potential **Claim** and the names of any potential claimants;

b.   the identity of the specific **Insureds** allegedly responsible for such **Wrongful Act**;

c.   the consequences that have resulted or may result from such **Wrongful Act**;

d.   the nature of the potential monetary damages or non-monetary relief that may be sought in consequence of such specific **Wrongful Act**; and

e.   the circumstances by which **Insureds** first became aware of such **Wrongful Act**;

then any **Claim** otherwise covered pursuant to this policy that is subsequently made and that arises out of such **Wrongful Act** shall be deemed to have been first made against an **Insured** and reported to the Insurer by an **Insured** at the time such written notice was received by the Insurer.

No coverage is provided for fees and expenses incurred prior to the time such **Wrongful Act** results in a **Claim**, even if such amount also benefits the defense of a covered **Claim** or such **Wrongful Act** subsequently gives rise to a **Claim**.

3.   **Interrelated Claims**

More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be considered as one **Claim** which **Claim** shall be deemed to have been first made on the earlier of:

a.   the date on which the earliest such **Claim** was first made, or

b.   the first date valid notice was given by an **Insured** to the Insurer under this policy of any **Wrongful Act** or under any prior policy of any **Wrongful Act** or any fact, circumstance, situation, event or transaction that underlies any such **Claim**.

In no event shall an individual lawsuit or proceeding constitute more than one **Claim**.

4.   **To Whom Notices are Sent**

The **Insureds** shall give written notice to the Insurer by regular mail or email sent to the addresses specified in the Declarations. The date the Insurer receives such notice shall constitute the date such notice was given. Proof of mailing shall be sufficient proof of notice.

© CNA  All Rights Reserved.



## VII.   EXTENDED REPORTING PERIOD

### 1.   Optional Extended Reporting Period

a.   If the **Named Insured** or the Insurer non-renews this policy, the **Named Insured** shall have the right to purchase, upon payment of an additional premium as described in the Declarations, an extension of this policy for the period as described in the Declarations, but only to the extent a **Claim** is first made or deemed to be first made during such period for **Wrongful Acts** committed before the earlier of the end of the **Policy Period** or the effective date of any **Takeover**.

b.   Notwithstanding the above, in the event of a **Takeover**, upon the request of the **Named Insured**, the Insurer shall offer an extension of this policy effective as of the date of the **Takeover**, but only to the extent a **Claim** is first made or deemed to be first made during such period for **Wrongful Acts** committed before the effective date of any **Takeover**. The Insurer shall offer such extension pursuant to the terms, conditions, exclusions and additional premium as the Insurer may reasonably decide.

The extension described in either paragraphs a. or b. above shall be referred to as an Extended Reporting Period.

### 2.   Payment of Extended Reported Period Premium

As a condition precedent to the right to purchase any Extended Reporting Period, the total premium for this policy must have been paid. The right to purchase any Extended Reporting Period shall end unless the Insurer receives written notice of the **Named Insured's** election to purchase such Extended Reporting Period and full payment of the premium for such period within thirty (30) days after the end of the **Policy Period** or the effective date of any **Takeover**.

### 3.   Non-Cancelable/Premium Fully Earned

If any Extended Reporting Period is purchased, it is non-cancelable, and the entire premium shall be deemed fully earned at its commencement without any obligation by the Insurer to return any portion thereof.

### 4.   No Separate Limit of Liability

There is no separate or additional Limit of Liability for any Extended Reporting Period.

## VIII.   CANCELLATION

### 1.   Insurer's Right to Cancel

The Insurer shall not cancel this policy except for non-payment of any premium when due. The Insurer shall provide to the **Named Insured** written notice of such cancellation stating when, not less than fifteen (15) days thereafter, such cancellation shall be effective.

### 2.   Named Insured's Right to Cancel

The **Insureds** grant the exclusive authority to cancel this policy to the **Named Insured**. The **Named Insured** may cancel this policy by providing the Insurer written notice stating when thereafter such cancellation shall be effective. The mailing or delivery of such notice shall be sufficient. The unearned premium shall be computed on a pro rata basis at the time cancellation is effected or as soon thereafter as practicable.

## IX.   TERRITORY

Coverage shall apply to **Claims** made and **Wrongful Acts** committed worldwide.

If permitted by applicable law, **Loss** from that portion of any **Claim** maintained in a **Foreign Jurisdiction** or to which the law of a **Foreign Jurisdiction** is applied, the Insurer shall apply to such **Claim** the terms and conditions of this policy as amended to include those of the **Foreign Policy** in the **Foreign Jurisdiction** that are more favorable to **Insureds** in the **Foreign Jurisdiction**. However, this paragraph shall not apply to any provision of any policy that has worldwide effect, including but not limited to any provision addressing limits of liability, retentions, other insurance, non-renewal, duty to defend, defense within or without limits, taxes, conformance to law or excess liability coverage, any claims made provisions, and any endorsement to this policy that excludes or limits coverage for specific events or litigation or that specifically states that it will have worldwide effect.

© CNA All Rights Reserved.



**X.      APPLICATION**

The Insurer has relied on the accuracy and completeness of the statements, information and representations contained in the **Application**. All such statements, information and representations are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy.

In the event the statements, representations or information in the **Application**, including materials submitted or required to be submitted therewith, contain any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under this policy:

a.   this policy shall be void from inception as to the **Insured Person** who knew as of the effective date of this policy the facts that were misrepresented or omitted, whether or not such person knew of such untruthful disclosure in the **Application**. For purposes of this paragraph, the knowledge of any **Insured** shall not be imputed to any **Insured Person**;

b.   this policy shall be void from inception as to the **Insured Entity** if any **Responsible Person** knew as of the effective date of the policy the facts that were misrepresented or omitted, whether or not such person knew of such untruthful disclosure in the **Application**.

**XI.     NON-RESCINDABILITY FOR NON-INDEMNIFIABLE LOSS**

Notwithstanding anything to the contrary in this policy, and solely to the extent there is **Non-Indemnifiable Loss**, the Insurer may not rescind this policy with respect to any **Insured Person** for any reason.

**XII.    OTHER INSURANCE**

The coverage provided under this policy shall apply only as excess over any other valid and collectible directors and officers' liability insurance, professional liability insurance or employment practices liability insurance, or any other insurance, unless any such other insurance is written only as specific excess insurance over the Limit of Liability provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other Insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**. If according to the terms and conditions of any employment practices liability insurance providing coverage for a **Wrongful Employment Practices Claim**, an insurer issuing such coverage is not liable for **Loss** in connection with such **Wrongful Employment Practices Claim**, then the Insurer shall be liable for payment of the portion of such **Loss** constituting covered **Loss** under this policy (specifically excess of any other valid and collective employment practices liability insurance providing coverage for such **Loss**).

Notwithstanding anything to the contrary above, this policy shall apply as primary to any personal umbrella excess liability insurance purchased by an **Insured Person**.

**XIII.   ESTATES, LEGAL REPRESENTATIVES AND SPOUSES**

The estates, heirs, legal representatives, assigns, spouses and any **Domestic Partner** of **Insured Persons** shall be considered **Insureds** under this policy; provided, however, coverage is afforded to such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where such **Claim** seeks damages from marital community property, jointly held property or property transferred from an **Insured Person** to such **Insured Person's** spouse or **Domestic Partner**. No coverage is provided for any act, error or omission of an estate, heir, legal representative, assign, spouse or **Domestic Partner**. All terms and conditions of this policy, including without limitation the Retention, applicable to **Loss** incurred by an **Insured Person** shall also apply to **Loss** incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

**XIV.   NO ACTION AGAINST INSURER**

1.   No action shall be taken against the Insurer unless, as a condition precedent, there shall have been full compliance with all the provisions of this policy nor until the amount of an **Insured's** obligation to pay shall have been finally determined either by final and non-appealable judgment against such **Insured** after trial or by written agreement of such **Insured**, the claimant and the Insurer.

2.   No person or organization shall have any right under this policy to join the Insurer as a party to any **Claim** against an **Insured** to determine such **Insured's** liability, nor shall the Insurer be impleaded by an **Insured** or their legal representatives in any such **Claim**.

© CNA  All Rights Reserved.



**XV.   ASSIGNMENT OF INTEREST**

Assignment of interest under this policy shall not bind the Insurer unless the Insurer's consent to such assignment is endorsed to this policy.

**XVI.   NEW AND EXISTING SUBSIDIARIES AND FUNDS**

1.  If, after the effective date of this policy, any **Insured Entity** other than a **Fund** first has **Management Control** of any entity, then such entity and any subsidiaries, directors, officers, trustees, governors, employees, managers, members or general partners of such entity who otherwise would thereby become an **Insured** shall be covered under this policy, subject to its terms and conditions. However, if any of the gross annual fees, assets under management, or assets of such entity exceed fifteen percent (15%) of the gross annual fees, assets under management or assets, respectively, of the **Insured Entity** prior to such assumption of **Management Control**, then the Insurer, at its sole option upon:

    a.  submission of such information as the Insurer may require; and

    b.  payment of any additional premium or amendment of the provisions of the policy;

    may agree to provide coverage for such subsidiaries, directors, officers, trustees, governors, employees, managers, members or general partners.

2.  If, after the effective date of this policy, the **Named Insured** creates a new **Fund**, then such **Fund** and its directors, officers, trustees, governors, employees, managers, members or general partners of such **Fund** who otherwise would thereby become an **Insured** shall be covered under this policy.

3.  If, after the effective date of this policy, the **Named Insured** purchases or acquires control of a new **Fund**, then such **Fund** and its directors, officers, trustees, governors, employees, managers, members or general partners of such **Fund** who otherwise would thereby become an **Insured** shall be covered under this **Policy**, subject to its terms and conditions, provided that:

    a.  the consolidated assets under management of such new **Fund** do not exceed the percentage (as stated in the Declarations) of the consolidated assets of all **Funds** under management as stated in such **Funds'** most recent audited financial statements issued prior to the date of the creation or sponsorship of such new **Fund**; or

    b.  other than as described in a. above, the Insurer, at its sole option upon submission of such information as the Insurer may require, and payment of any additional premium or amendment of the provisions of this policy, agrees to provide coverage for such new **Fund** and its directors, officers, trustees, governors, employees, managers, members or general partners.

4.  There shall be no coverage under this policy for any **Wrongful Act** by such entity or such **Fund** or by any persons or entities considered to be **Insureds** pursuant to paragraphs 1., 2. or 3. above, where such **Wrongful Act** occurred in whole or in part before the date the **Insured Entity** first has such **Management Control**, or the effective date of the creation of the **Fund** by the **Insured Entity**, or for any **Wrongful Act** occurring on or after such date which, together with any **Wrongful Acts** occurring before such date, would be considered **Interrelated Wrongful Acts**.

**XVII.   CHANGE OF STATUS OF INSUREDS**

1.  **Takeover**

    In the event of a **Takeover**, coverage under this policy shall continue until this policy is otherwise terminated, but only with respect to **Claims** for **Wrongful Acts** occurring before the effective date of the **Takeover**, unless (i) the Insurer is notified in writing of the **Takeover** prior to the **Takeover** effective date and agrees in writing to provide coverage for **Wrongful Acts** occurring on or after such effective date, and (ii) the **Named Insured** accepts any special terms, conditions, exclusions and pays any additional premium charge required by the Insurer.  This policy may not be canceled after the effective date of the **Takeover** and the entire premium for this policy shall be deemed earned as of such effective date.

2.  **Cessation of Subsidiary**

    If any organization ceases to be a **Subsidiary**, coverage under this policy shall continue until this policy is otherwise terminated, but only with respect to **Claims** for **Wrongful Acts** occurring before the effective date of such cessation, unless (i) the Insurer is notified in writing of such cessation prior to the effective

© CNA  All Rights Reserved.



date thereof and agrees in writing to provide coverage for **Wrongful Acts** occurring on or after such effective date, and (ii) the **Named Insured** accepts any special terms, conditions and exclusions and pays any additional premium charge required by the Insurer.

## XVIII. ASSISTANCE AND COOPERATION

Each **Insured** shall give the Insurer full cooperation and without any waiver of privilege or confidentiality, shall furnish the Insurer with copies of reports, investigations, pleadings, and all related papers, and such other information, assistance and cooperation as the Insurer may reasonably request. The **Insureds** shall do nothing that in any way increases the Insurer's exposure under this policy or in any way prejudices the Insurer's potential or actual rights of recovery. The failure of any **Insured Person** to give the Insurer cooperation and information as required hereunder shall not impair the rights of any other **Insured Person** under this policy.

## XIX. SUBROGATION AND RECOVERY

To the extent it pays any **Loss**, the Insurer shall be subrogated to all the **Insureds'** rights of recovery. The **Insureds** shall execute all papers necessary to secure such rights, including executing any documents necessary to enable the Insurer effectively to bring suit in their name, and shall take no action that impairs the Insurer's rights of subrogation or recovery. In no event, however, shall the Insurer exercise its right to subrogate against an **Insured Person** under this policy unless the **Illegal Profits/Deliberate Acts** exclusion applies to such **Insured Person**.

In the event the Insurer recovers amounts it paid under this policy, the Insurer will reinstate the Limits of Liability of this policy to the extent of such recovery, less its costs incurred in administering and obtaining such recovery. The Insurer assumes no duty to seek a recovery of any amounts paid under this policy. The Insurer, in its sole and absolute discretion, shall determine the amounts to be credited, if any, toward a reinstatement of the Limits of Liability.

## XX. NOTICES TO THE NAMED INSURED

Any notices to the **Named Insured** under this policy shall be provided to the **Named Insured** at the last known address and to its insurance agent or broker. If properly mailed to the **Named Insured** at such address, the date of mailing shall constitute the date such notice was given.

## XXI. CHANGES

Notice to or knowledge possessed by any agent or other person acting on behalf of the Insurer shall not effect a waiver or a change in any part of this policy or stop the Insurer from asserting any right under the provisions of this policy, nor shall the provisions be waived or changed except by written endorsement issued to form a part of this policy.

## XXII. COMPANY AUTHORIZATION

The **Insureds** agree that the **Named Insured** will act on behalf of all **Insureds** with respect to giving of all notice to the Insurer (except notices provided in Section **VI.**, paragraphs 1. or 2.), the receipt of notices from the Insurer, the payment of the premiums, the receipt of any return premiums that may become due under this policy, and the agreement to and acceptance of endorsements.

## XXIII. ENTIRE AGREEMENT

The **Insureds** agree that this policy, including the **Application** and any materials submitted or required to be submitted therewith, and any written endorsement attached, constitute the entire contract existing between them and the Insurer or any of its agents relating to this insurance.

## XXIV. BANKRUPTCY

Bankruptcy or insolvency of any **Insured Entity** or any **Insured Person** shall not relieve the Insurer of any of its obligations hereunder.

Coverage provided under this policy is intended to protect and benefit the **Insured Persons**. Further, if a liquidation or reorganization proceeding is commenced by the **Named Insured** or any other **Insured Entity** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "Bankruptcy Law") then, with respect to a covered **Claim** under this policy, the **Insureds** hereby:

© CNA  All Rights Reserved.



1. waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such Bankruptcy Law; and

2. agree not to oppose or object to any efforts by the Insurer or any **Insured** to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

## XXV.   MEDIATION

All disputes or differences between the **Insured** or Insurer that may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, shall be submitted to JAMS for mediation prior to commencing any civil action. Either party may commence mediation by providing to both JAMS and the other party a written request for mediation, setting forth the subject of the dispute and the relief requested. The parties will cooperate with JAMS and with one another in selecting a mediator from the JAMS panel of neutrals, and in scheduling the mediation proceedings. The parties covenant that they will participate in the mediation in good faith, and that they will share equally in its costs. All offers, promises, conduct and statements, whether oral or written, made in the course of the mediation by any of the parties, their agents, employees, experts and attorneys, and by the mediator and any JAMS employees, are confidential, privileged and inadmissible for any purpose, including impeachment, in any litigation or other proceeding involving the parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the mediation. Either party may seek equitable relief prior to the mediation to preserve the status quo pending the completion of that process.

Except for such an action to obtain equitable relief, neither party may commence a civil action with respect to the matters submitted to mediation until after the completion of the initial mediation session, or 45 days after the date of filing the written request for mediation, whichever occurs first. Mediation may continue after the commencement of a civil action, if the parties so desire. The provisions of this clause may be enforced by any court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorneys' fees, to be paid by the party against whom enforcement is ordered.

## XXVI.   PRIORITY OF PAYMENTS

If the amount of any covered **Loss** which is otherwise due and owing by the Insurer under the Management Liability (Individual) Insuring Agreement of any Coverage Part of this policy and any other insuring agreement of any Coverage Part of this policy, the Insurer shall pay the amount of **Loss** due under the Management Liability (Individual) Insuring Agreement of any Coverage Part of this policy first up to the remaining Limit of Liability available under the policy and shall then pay any amount of **Loss** due under the other Insuring Agreements up to the remaining Limit of Liability available under the policy.

Nothing herein shall be deemed to require the delay or postponement of the payment of any other **Claim** subsequently reported to the Insurer but on which a judgment or settlement occurs prior to the judgment or settlement on an earlier reported **Claim**, regardless of the impact such payment has on the available limits of liability for paying the **Claim** first reported to the Insurer.

## XXVII.   HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

## XXVIII.   VALUATIONS

All premiums, limits, retentions, **Loss** and other amounts under this policy are expressed and payable in United States of America currency. If any judgment, settlement or any part of **Loss** is expressed or calculated in any other currency, payment of such **Loss** due under this policy will be made in the currency of the United States of America, at the rate of exchange published in The Wall Street Journal on the date the Insurer's obligation to pay such **Loss** is established, or, if not published on that date, on the date of next publication.

## XXIX.   COORDINATION OF COVERAGE CLAUSE

Any **Loss** otherwise covered by both this policy and any employment practices liability policy or coverage part issued by the Insurer, any affiliate of the Insurer or any other insurance company ("EPL Coverage") first shall be covered as provided in, and shall be subject to the limit of liability, retention and coinsurance percentage applicable to such EPL Coverage. Any remaining **Loss** otherwise covered by this policy that is not paid under

© CNA  All Rights Reserved.



such EPL Coverage shall be covered as provided in, and shall be subject to the Limit of Liability and Retention applicable to this policy; provided the Retention applicable to such **Loss** under this policy shall be reduced by the amount of **Loss** otherwise covered by this policy that is paid by an **Insured** as the retention under such EPL Coverage.

**XXX.   TRADE AND ECONOMIC SANCTIONS**

This policy does not provide coverage for an **Insured**, transaction or that part of loss that is uninsurable under the laws or regulations of the United States concerning trade or economic sanctions.

IN WITNESS WHEREOF, the Insurer has caused this policy to be executed by its Chairman and Secretary, but this policy shall not be binding upon us unless completed by the attachment of the Declarations.

Chairman                                        Secretary

© CNA  All Rights Reserved.



**INVESTMENT MANAGEMENT LIABILITY SOLUTIONS**

**INVESTMENT ADVISER PROFESSIONAL LIABILITY COVERAGE PART**

I.    **INSURING AGREEMENT**

    <u>**Investment Adviser Professional Liability**</u>

    The Insurer shall pay **Loss** on behalf of an **Insured** resulting from any **Claim** first made against such **Insured** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act** by such **Insured** or by any entity or natural person for whose acts the **Insured** becomes legally liable.

II.   **SPECIAL DEFINITIONS**

    **Independent Director** means any director of a **Mutual Fund** who is not an "Interested Person" of such **Mutual Fund** as defined in Section 2(a)(19) of the Investment Company Act of 1940.

    **Insured Entity** means the **Investment Adviser**.

    **Insured Person** means any **Executive** or **Employee** of an **Insured Entity**. **Insured Person** also means all persons who were, now are or shall be duly elected or appointed members of any Advisory Board or Advisory Committee of the **Insured Entity**, but only to the extent that such individuals are entitled to indemnification in the same manner as the **Executives** or **Employees** of the **Insured Entity**.

    **Investment Banking Services** means any advice or service relating to or in connection with any aspect of corporate mergers, acquisitions, securities offerings, restructuring, divestitures or investment banking.

    **Loss**, as defined in General Terms and Conditions, Section **II**. **DEFINITIONS** shall be deemed to exclude, for purposes of this Coverage Part, **Sox 304/Dodd Frank 954 Costs**.

    **Professional Services** means:

    1.    financial, economic or investment advice regarding investments in securities;

    2.    investment management, portfolio management and asset allocation services performed;

    3.    the selection and oversight of investment advisers or third party service providers; or

    4.    the publication of written material in connection with any of the activities and services set forth in paragraphs 1., 2., or 3. above;

    for and on behalf of a:

    a.    customer or client, including while acting as a broker or dealer in securities, but only if such services are performed by a party named in the Schedule of Brokers and Dealers, and inuring to the benefit of the **Insured Entity** and performed solely for such customer or client; or

    b.    **Fund** pursuant to a written investment contract agreement with the **Insured Entity**.

    However, **Professional Services** shall not include any **Investment Banking Services**, other than **Investment Banking Services** provided to a client where neither the **Insured** nor the client is a party or participant in the actual investment banking transaction.

    **Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by an **Insured** in rendering, or failing to render, **Professional Services**.

III.  **SPECIAL EXCLUSIONS**

    The Insurer shall not be liable to pay that part of **Loss** under this policy in connection with any **Claim** made against any **Insured Person** or any **Insured Entity**:

    1.    **Bodily Injury/Property Damage**

          based on or arising out of any actual or alleged bodily injury (including death), sickness, disease, emotional distress, mental anguish, libel, slander or defamation of any person, or damage to or destruction of any tangible property, including loss of use, except that this exclusion shall not apply to:

        a.    emotional distress or mental anguish solely arising out of the rendering of **Professional Services**; or

---

GSL2285XX (12-12)
Page 1

© CNA  All Rights Reserved.



b.  damage to, destruction of, loss of, or loss of use of, client records in the possession of the Insured;

2.  **Security Broker or Dealer**

for liability involving the activities of any **Insured** as a "broker" or "dealer" in securities, as defined in Sections 3(a)(4) and 3(a)(5), respectively, of the Securities Exchange Act of 1934; provided, however, this exclusion shall not apply to:

a.  the distribution, underwriting or resale of securities purchased by an **Insured** directly from a **Mutual Fund** solely for resale to shareholders of that fund; or

b.  any "broker" or "dealer" identified as such in an endorsement to the policy;

3.  **Claims by Insureds or Funds**

by or on behalf of:

a.  any **Insured** in any capacity;

b.  any **Fund**;

c.  any security holder, member or partner of an **Insured Entity**, unless such security holder's, member's or partner's **Claim** is brought and maintained solely by persons acting totally independent of and totally without the solicitation, assistance, participation or intervention of the **Insured Entity**, or any **Insured Person** (unless such solicitation, assistance, participation or intervention of such **Insured Person** is **Whistleblower Activity**);

Provided, however, that this exclusion shall not apply to any **Claim**:

i.  brought by a **Fund** derivatively by the clients and customers of such **Fund** in the **Fund's** capacity as a customer or client of the **Insured Entity** and solely where such **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, the **Fund** itself;

ii.  that is in the form of a cross-claim, third party claim or otherwise for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded under this Policy;

iii.  brought by an **Employee** of an **Insured Entity** solely in his or her capacity as a customer or client of the **Insured Entity** and is brought and maintained totally independent of and totally without the solicitation, assistance, participation or intervention of the **Insured Entity** or any **Executive** of the **Insured Entity**;

iv.  brought by a **Fund** and in the opinion of independent counsel selected jointly by the **Insured Entity** and the Insurer, failure to make such **Claim** would result in liability upon the **Independent Directors** of such **Fund**;

v.  brought or maintained by duly elected or appointed members of any Advisory Board or Advisory Committee of the **Insured Entity**, provided that such **Claim** is brought and maintained solely by such persons acting totally independent of and totally without the solicitation, assistance, participation or intervention of the **Insured Entity**, **Investment Adviser**, or any other **Insured Person**.

© CNA  All Rights Reserved.



INVESTMENT MANAGEMENT LIABILITY SOLUTIONS

INVESTMENT ADVISER MANAGEMENT LIABILITY COVERAGE PART

I.   **INSURING AGREEMENTS**

1.   **Management Liability (Individual)**

The Insurer shall pay **Loss** on behalf of an **Insured Person** resulting from any **Claim** first made against such **Insured Person** during the **Policy Period** or the Extended Reporting Period, if applicable, for any **Wrongful Act**, except and to the extent that an **Insured Entity** has indemnified such **Insured Person** for such **Loss**.

2.   **Management Liability (Reimbursement)**

The Insurer shall pay **Loss** on behalf of the **Insured Entity** for which an **Insured Entity** has indemnified an **Insured Person** resulting from any **Claim** first made against such **Insured Person** during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Wrongful Act**.

3.   **Insured Entity Securities Liability**

The Insurer shall pay **Loss** on behalf of an **Insured Entity** resulting from a **Securities Claim** first made against such **Insured Entity** during the **Policy Period** or the Extending Reporting Period, if applicable, for any **Wrongful Act**.

4.   **Shareholder Derivative Demand Investigation Costs**

The Insurer shall pay on behalf of an **Insured Entity** all **Shareholder Derivative Demand Investigation Costs** resulting from any **Shareholder Derivative Demand** first made during the **Policy Period** or the Extended Reporting Period, if applicable, for any **Wrongful Act**.

II.   **SPECIAL DEFINITIONS**

**Insured Entity** means the **Investment Adviser**.

**Insured Person** means any **Executive** or **Employee** of an **Insured Entity**. **Insured Person** also means all persons who were, now are or shall be duly elected or appointed members of any Advisory Board or Advisory Committee of the **Insured Entity**, but only to the extent that such individuals are entitled to indemnification in the same manner as the **Executives** or **Employees** of the **Insured Entity**.

**Loss** as defined in the General Terms and Conditions, Section **II**. **DEFINITIONS** shall be amended for purposes of this Coverage Part to include, other than **Defense Costs**, **Shareholder Derivative Demand Investigation Costs**, but only in connection with Insuring Agreement 4. above. In addition, solely as respects Insuring Agreements 1. and 2. above, **Loss** shall also include reasonable and necessary fees, costs and expenses incurred by any **Insured Person** in connection with any **Shareholder Derivative Demand**.

**Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by:

1.   an **Executive** in his or her capacity as such or any matter claimed against such **Executive** solely by reason of his or her status as such;

2.   an **Employee** in his or her capacity as such, but solely with respect to any **Securities Claim**;

3.   an **Insured Entity**, but solely with respect to any **Securities Claim**; or

4.   an **Insured Person**, where such **Wrongful Act** is a **Wrongful Employment Practice**.

**Wrongful Employment Practice** means any actual or alleged:

1.   wrongful dismissal or discharge or termination of employment, whether actual or constructive;

2.   employment-related misrepresentation;

3.   violation of any federal, state or local laws (whether common-law or statutory) concerning employment or discrimination in employment, including but not limited to the Americans with Disabilities Act of 1992, the Civil

© CNA  All Rights Reserved.



Rights Act of 1991, the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866 and the Sarbanes-Oxley Act of 2002;

4. sexual harassment or other unlawful harassment;

5. wrongful deprivation of career opportunity, failure to grant tenure, demotion, or failure to employ or promote;

6. wrongful discipline;

7. retaliation;

8. negligent evaluation of **employees**;

9. failure to adopt adequate workplace or employment policies and procedures;

10. employment-related libel or slander, humiliation or invasion of privacy;

11. with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, false imprisonment, infliction of emotional distress, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights; or

12. any other employment related workplace torts;

but only if such **Wrongful Employment Practice** relates to an **Insured Person** or an applicant for employment with an **Insured Entity** other than a **Service Provider**, whether committed directly, indirectly, intentionally or unintentionally. With respect to any natural person, customer or client, **Wrongful Employment Practice** shall only mean actual or alleged discrimination, sexual harassment or other unlawful harassment, or violation of any federal, state or local anti-discrimination or harassment laws (whether common law or statutory), whether committed directly, indirectly, intentionally or unintentionally.

**Wrongful Employment Practices Claim** means a **Claim** alleging any **Wrongful Employment Practice** against an **Insured Person**.

III.    **SPECIAL EXCLUSIONS**

The Insurer shall not be liable to pay that part of **Loss** under this policy in connection with any **Claim** made against any **Insured Person** or any **Insured Entity**:

1. **Bodily Injury/Property Damage**

   based on or arising out of any actual or alleged bodily injury (including death), sickness, disease, emotional distress, mental anguish, libel, slander or defamation of any person, or damage to or destruction of any tangible property including loss of use, except that this exclusion shall not apply to a **Securities Claim** or to any allegations of emotional distress, mental anguish, libel, slander or defamation by a claimant in a **Wrongful Employment Practices Claim**;

2. **Claims By Insureds**

   by or on behalf of:

   a.   any **Insured Persons** in any capacity;

   b.   any **Insured Entity**;

   c.   any security holder, member or partner of an **Insured Entity**, whether directly or derivatively, including a **Shareholder Derivative Suit**, unless such security holder's, member's or partner's **Claim** is brought and maintained solely by persons acting totally independent of and totally without the solicitation, assistance, participation or intervention of the **Insured Entity**, or any **Insured Person** (unless such solicitation, assistance, participation or intervention of such **Insured Person** is **Whistleblower Activity**);

   Provided, however, that this exclusion shall not apply to:

   i.    any **Wrongful Employment Practices Claim** brought by an **Employee** of an **Insured Entity**;

   ii.   any **Claim** that is in the form of a cross-claim, third party claim or otherwise for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded under this policy;

© CNA All Rights Reserved.



iii.  any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, liquidator, receiver or rehabilitator for an **Insured Entity**, or any assignee of such trustee, examiner, liquidator, receiver or rehabilitator;

iv.  any **Claim** brought by any past **Executive** of an **Insured Entity** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the board of managers, general partner, partnership manager, trust manager, In-House General Counsel, Chief Compliance Officer or Risk Manager (or equivalent position) of or consultant for an **Insured Entity** for at least two (2) years prior to such **Claim** being first made; or

v.  any **Claim** brought or maintained by duly elected or appointed members of any Advisory Board or Advisory Committee of the **Insured Entity**, provided that such **Claim** is brought and maintained solely by such persons acting totally independent of and totally without the solicitation, assistance, participation or intervention of the **Insured Entity**, **Investment Adviser**, or any other **Insured Person**.

© CNA  All Rights Reserved.



INVESTMENT MANAGEMENT LIABILITY SOLUTIONS

HEDGE FUND MANAGEMENT AND PROFESSIONAL LIABILITY COVERAGE PART

I.   **INSURING AGREEMENTS**

1.   <u>**Hedge Fund Management and Professional Liability**</u>

The Insurer shall pay **Loss** on behalf of the **Hedge Fund Insureds** resulting from any **Claim** first made against any **Hedge Fund Insured** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act**.

2.   <u>**Service Provider Professional Liability**</u>

The Insurer shall pay **Loss** on behalf of the **Service Provider Insureds** resulting from any **Claim** first made against the **Service Provider Insured** during the **Policy Period** or Extended Reporting Period, if applicable, for a **Wrongful Act**.

3.   <u>**Shareholder Derivative Demand Investigation Costs**</u>

The Insurer shall pay on behalf of a **Hedge Fund** all **Shareholder Derivative Demand Investigation Costs** resulting from any **Shareholder Derivative Demand** first made during the **Policy Period** or the Extended Reporting Period, if applicable, for any **Wrongful Act**.

II.  **SPECIAL DEFINITIONS**

**Hedge Fund Insureds** means any **Hedge Fund** and its **Insured Persons**.

**Independent Director** means one or more past, present or future **Executives** of the **Hedge Fund** who are not and have never been an officer or **Employee** of the **Hedge Fund**.

**Insured Entity** means the **Hedge Fund** and any **Service Provider**.

**Insured Person** means any:

1.   **Executive** or **Employee** of a **Hedge Fund**; or

2.   any natural person who is a past, present or future employee of a **Service Provider**;

3.   any persons who were, now are or shall be duly elected or appointed members of any Advisory Board or Advisory Committee of the **Insured Entity**, but only to the extent that such individuals are entitled to indemnification in the same manner as the **Executives** or **Employees** of the **Insured Entity**.

**Investment Banking Services** means any advice or service relating to or in connection with any aspect of corporate mergers, acquisitions, securities offerings, restructuring, divestitures or investment banking.

**Loss**, as defined in General Terms and Conditions, Section **II**. **DEFINITIONS**, shall be amended for purposes of this Coverage Part to include, other than **Defense Costs**:

1.   with respect to Insuring Agreement 1. above, all reasonable and necessary fees, costs and expenses incurred by any **Insured Person** in connection with any **Shareholder Derivative Demand**; and

2.   with respect to Insuring Agreement 3. above, **Shareholder Derivative Demand Investigation Costs**.

In addition, **Loss** shall be deemed to exclude, for purposes of this Coverage Part, the amount that represents the return of any contribution of capital to any **Executive** or **Employee** or any **Hedge Fund**.

**Professional Services**:

1.   with respect to **Hedge Fund Insureds**, means:

a.   the capitalization, formation, operation, management, administration and marketing of a **Hedge Fund**;

b.   providing financial, economic or investment advice regarding investments in securities for, or on behalf of, a **Hedge Fund**;

© CNA  All Rights Reserved.



    c.    portfolio management and asset management services performed for, or on behalf of, a **Hedge Fund**; or

    d.    the selection and oversight of outside service providers and unaffiliated investment advisers for, or on behalf of, a **Hedge Fund**;

2.    with respect to **Service Provider Insureds**, means those services performed or required to be performed by **Service Provider Insureds** solely in their capacity as **Administrator**, **Distributor**, or **Transfer Agent** for, or on behalf of, a **Hedge Fund**, pursuant to a written contract with such **Hedge Fund**.

**Professional Services** shall not include any **Investment Banking Services**, other than **Investment Banking Services** with respect to shares issued by a **Hedge Fund**, or other restructuring of a **Hedge Fund** or the voting of shares held in portfolios of a **Hedge Fund**.

**Service Provider Insureds** means the **Service Provider** and its **Insured Persons**.

**Takeover**, as defined in the General Terms and Conditions, Section **II. DEFINITIONS**, shall be amended for purposes of this Coverage Part to mean the acquisition or change of control of the sponsorship of the **Hedge Fund** by another entity or person or group of entities or persons acting in concert.

**Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted;

1.    by any **Insured Person** of a **Hedge Fund** in his or her capacity as such or any matter claimed against such **Insured Person** solely by reason of his or her status as such;

2.    by a **Hedge Fund** in its capacity as such;

3.    by any **Service Provider Insured** in the rendering of **Professional Services**; or

4.    by any **Hedge Fund Insured** in the rendering or failing to render **Professional Services**.

III.    **SPECIAL EXCLUSIONS**

The Insurer shall not be liable to pay that part of **Loss** under this policy in connection with any **Claim** made against any **Insured**:

1.    **Bodily Injury/Property Damage**

    based on or arising out of any actual or alleged bodily injury (including death), sickness, disease, emotional distress, mental anguish, libel, slander or defamation of any person, or damage to or destruction of any tangible property including loss of use except that this exclusion shall not apply to:

    a.    emotional distress or mental anguish solely arising out of the rendering of professional services; or

    b.    allegations of emotional distress, mental anguish, libel, slander or defamation by a claimant in a **Wrongful Employment Practices Claim**;

2.    **Claims by Insureds or Investment Adviser**

    by or on behalf of:

    a.    any **Insured Persons** in any capacity;

    b.    the **Insured Entity**;

    c.    any **Investment Adviser**; or

    d.    any security holder, member or partner of an **Insured Entity** or **Investment Adviser**, whether directly or derivatively, unless such security holder's, member's or partner's **Claim** is brought and maintained solely by persons acting totally independent of and totally without the solicitation, assistance, participation or intervention of the **Insured Entity**, **Investment Adviser** or any **Insured Person** (unless such solicitation, assistance, participation or intervention of such **Insured Person** is **Whistleblower Activity**);

Provided, however, that this exclusion shall not apply to:

© CNA  All Rights Reserved.



i.   any **Claim** by an **Employee** of the **Hedge Fund** that constitutes a **Wrongful Employment Practices Claim** or is brought solely in his or her capacity as a customer or client of the **Hedge Fund** which is brought and maintained totally independent of and totally without the solicitation, assistance, participation or intervention of the **Hedge Fund** or any **Executive** of the **Hedge Fund**;

ii.  any **Claim** that is in the form of a cross-claim, third party claim or otherwise for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded under this policy;

iii. any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, liquidator, receiver or rehabilitator for an **Insured Entity**, or any assignee of such trustee, examiner, liquidator, receiver or rehabilitator;

iv.  any **Claim** brought by any past **Executive** of a **Hedge Fund** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the board of managers, general partner, partnership manager, trust manager, In-House General Counsel, Chief Compliance Officer or Risk Manager (or equivalent position) of or consultant for a **Hedge Fund** for at least two (2) years prior to such **Claim** being first made;

v.   the extent that such **Claim** is made against an:

   1. **Independent Director**; or

   2. **Independent Director** and a **Hedge Fund**, but only to the extent that and for as long as such **Independent Director** remains a codefendant in such **Claim**,

      provided that such **Claim** is brought and maintained totally independent of and totally without the solicitation, assistance, participation or intervention of any **Independent Director** or **Hedge Fund** against whom such **Claim** is made; or

vi.  any **Claim** brought or maintained by duly elected or appointed members of any Advisory Board or Advisory Committee of the **Insured Entity**, provided that such **Claim** is brought and maintained solely by such persons acting totally independent of and totally without the solicitation, assistance, participation or intervention of the **Insured Entity**, **Investment Adviser**, or any other **Insured Person**;

3.  **Security Broker or Dealer**

   for liability involving the activities of any **Hedge Fund Insured** as a "broker" or "dealer" in securities, as defined in Sections 3(a)(4) and 3(a)(5), respectively, of the Securities Exchange Act of 1934.

© CNA  All Rights Reserved.



**IMPORTANT INFORMATION**

**NOTICE - OFFER OF TERRORISM COVERAGE**
**NOTICE - DISCLOSURE OF PREMIUM**

**THIS NOTICE DOES NOT FORM A PART OF YOUR POLICY, GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY**

You are hereby notified that under the Terrorism Risk Insurance Act, as extended and reauthorized ("Act"), you have a right to purchase insurance coverage of losses arising out of acts of terrorism, as defined in Section 102(1) of the Act, subject to all applicable policy provisions. The Terrorism Risk Insurance Act established a federal program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks.

This Notice is designed to alert you to coverage restrictions and to certain terrorism provisions in the policy. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply.

CHANGE IN THE DEFINITION OF A CERTIFIED ACT OF TERRORISM

The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. Originally the Act provides that to be certified an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States. However, the 2007 re-authorization of the Act no longer requires the act of terrorism to be committed by or on behalf of a foreign interest and certified acts of terrorism now encompass, for example, a terrorist act committed against the United States government by a United States citizen when the act is determined by the federal government to be "a certified act of terrorism".

In accordance with the Act, we are required to offer you coverage for losses resulting from an act of terrorism that is certified under the federal program. The policy's other provisions, including nuclear, war or military action exclusions, will still apply to such an act. The premium charge for terrorism coverage for your policy is $0.

DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

LIMITATION ON PAYMENT OF TERRORISM LOSSES (applies to policies which cover terrorism losses insured under the federal program, including those which only cover fire losses)

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

Further, this coverage is subject to a limit on our liability, pursuant to the federal law where, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

All other terms and conditions of the Policy remain unchanged.



This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

GSL3908XX (1-08)
Page 2
Continental Casualty Company
Insured Name: Standard General L.P.

Policy No:   425207388
Endorsement No:  1
Effective Date:

© CNA  All Rights Reserved.



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COVERAGE AND CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

Wherever used in this endorsement: 1) "We" means the insurer listed on the policy declarations page; and 2) "Your" means the Named Insured listed on the policy declarations page.

This endorsement modifies insurance provided under "your" policy.

In consideration of the premium charge of $ 0, it is agreed as follows:

This policy provides coverage for losses arising from "Certified Acts of Terrorism" subject to all other terms and conditions of this policy.

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and "we" have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____

(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

GSL3842XX (1-08)
Page 1
Continental Casualty Company
Insured Name: Standard General L.P.

Policy No:   425207388
Endorsement No:   2
Effective Date:

© CNA  All Rights Reserved.



**AMENDATORY ENDORSEMENT**
**(FOR USE WITH INVESTMENT MANAGEMENT LIABILITY SOLUTIONS POLICY)**

In consideration of the premium paid for this Policy, it is understood and agreed as follows:

I.  The definitions of **Domestic Partner**, **Executive** and **Financial Insolvency** set forth in Section **II. DEFINITIONS** of the General Terms and Conditions are deleted in their entirety and replaced by the following:

**Domestic Partner** means any person qualifying as such under any federal, state or local laws or under an **Insured Entity's** employee benefit plans, or equivalents of such laws or plans in any **Foreign Jurisdiction**.

**Executive** means any natural person who is a past, present or future:

1.  duly elected or appointed director, officer, trustee, principal, regent or governor of a corporation; management committee member of a joint venture; member of the board of managers of a limited liability company; general partner or partner of an entity structured as a limited partnership (but not including a limited partner in a **Hedge Fund** structured as a limited partnership); or partnership manager of a general partnership;

2.  In-House General Counsel, Chief Compliance Officer or Risk Manager (or equivalent position) of the **Named Insured**; or

3.  any position equivalent to those listed under paragraphs 1. or 2. above.

**Financial Insolvency** means, with respect to an **Insured Entity**:

1.  the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official (including equivalents in any **Foreign Jurisdiction**) to take control of, supervise, manage or liquidate such **Insured Entity**, or such **Insured Entity** becoming a debtor in possession; and

2.  the inability of such **Insured Entity**, financially or under applicable law, to advance **Defense Costs** or indemnify any **Insured Person** for **Loss**.

II.  Section **III. GENERAL POLICY EXCLUSIONS** of the General Terms and Conditions is amended as follows:

A.  Exclusion 2. **Illegal Profits/Deliberate Acts** is deleted in its entirety and replaced by the following:

2.  **Illegal Profits/Deliberate Acts**

based upon or arising out of:

a.  the gaining of any profit, remuneration or financial advantage to which any **Insured** was not legally entitled; or
b.  the committing of any deliberate fraudulent or deliberate criminal act by any **Insured**,

if established in a final non-appealable adjudication in any action or proceeding, other than an action or proceeding initiated by the Insurer to determine coverage under this policy.

Paragraph a. does not apply to that portion of **Loss** attributable to violations of Section 11, 12 or 15 of the Securities Act of 1933, and
Solely with respect to paragraph b. above, any act or omission that is treated as a criminal violation in a **Foreign Jurisdiction** but that is not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal or deliberate fraudulent act occurred.

For purposes of determining the applicability of this exclusion:

© CNA  All Rights Reserved.



     i.     any **Wrongful Act** of an **Insured Person** shall not be imputed to any other **Insured Person**; and

     ii.     only the **Wrongful Acts** of any **Responsible Person** of an **Insured Entity** shall be imputed to such **Insured Entity**;

**B.**    Exclusion 4. **Prior Notice** is deleted in its entirety and replaced by the following:

    4.    **Prior Notice**

        based upon or arising out of any **Wrongful Act** or any matter, fact, circumstance, situation, transaction, or event which has been the subject of any written notice given by an **Insured** under any policy of which this policy is a direct or indirect renewal or replacement;

**III.**    Section **III. SPECIAL EXCLUSIONS**, Exclusion **4. Unregistered Securities**, of the Mutual Fund Management and Professional Liability Coverage Part, if purchased, is deleted in its entirety.

**IV.**    The General Terms and Conditions are amended as follows:

    **A.**    Section **III. GENERAL POLICY EXCLUSIONS**, Exclusion 3. **Pollution**, is deleted in its entirety.

    **B.**    Section **II. DEFINITIONS** is amended by the addition of the following new definition:

        **Clean-up Costs** means any expenses, including but not limited to legal and professional fees, incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

    **C.**    The definition of **Loss** set forth in Section **II. DEFINITIONS** is amended by the addition of the following:

        **Loss** shall not include **Clean-up Costs**.

**V.**    The first sentence of paragraph 4. **Conditions for Advancement of Defense Costs** of Section **V. SETTLEMENT/DEFENSE OF CLAIMS/ALLOCATION OF LOSS/ADVANCEMENT OF DEFENSE COSTS** of the General Terms and Conditions is deleted in its entirety and replaced by the following:

The Insurer, on behalf of the **Insureds**, shall advance **Defense Costs** no later than sixty (60) days after the receipt by the Insurer of bills detailing the amounts owed in excess of the applicable Retention.

**VI.**    Section **XI. NON-RESCINDABILITY FOR NON-INDEMNIFIABLE LOSS** of the General Terms and Conditions is deleted in its entirety and replaced by the following:

    **XI.**    **NON-RESCINDABILITY**

        Notwithstanding anything to the contrary in this policy, the Insurer may not rescind this policy for any reason.

**VII.**    The first sentence of Section **XII. OTHER INSURANCE** of the General Terms and Conditions is deleted in its entirety and replaced by the following:

The coverage provided under this policy shall apply only as excess over any other valid and collectible directors and officers' liability insurance, professional liability insurance or employment practices liability insurance, unless any such other insurance is written only as specific excess insurance over the Limit of Liability provided by this policy.

**VIII.**    Paragraph 1. of Section **XVI. NEW AND EXISTING SUBSIDIARIES AND FUNDS** of the General Terms and Conditions is deleted in its entirety and replaced by the following:

CNA71647XX (12-12)
Page 2
Continental Casualty Company
Insured Name: Standard General L.P.

Policy No:   425207388
Endorsement No:   3
Effective Date:

© CNA  All Rights Reserved.



1.  If, after the effective date of this policy, any **Insured Entity** other than a **Fund** first has **Management Control** of any entity, then such entity and any subsidiaries, directors, officers, trustees, governors, employees, managers, members or general partners of such entity who otherwise would thereby become an **Insured** shall be covered under this policy, subject to its terms and conditions. However, if any of the gross annual fees, assets under management, or assets of such entity exceed twenty-five percent (25%) of the gross annual fees, assets under management or assets, respectively, of the **Insured Entity** prior to such assumption of **Management Control**, then the Insurer, at its sole option upon:

    a.  submission of such information as the Insurer may require; and
    b.  payment of any additional premium or amendment of the provisions of the policy;

    may agree to provide coverage for such subsidiaries, directors, officers, trustees, governors, employees, managers, members or general partners.

IX.  Section **XVIII. ASSISTANCE AND COOPERATION** of the General Terms and Conditions is deleted in its entirety and replaced by the following:

**XVIII.   ASSISTANCE AND COOPERATION**

Each **Insured** shall give the Insurer full cooperation and without any waiver of privilege or confidentiality, shall furnish the Insurer with copies of reports, investigations, pleadings, and all related papers, and such other information, assistance and cooperation as the Insurer may reasonably request. The **Insureds** shall do nothing intentionally that in any way increases the Insurer's exposure under this policy or in any way prejudices the Insurer's potential or actual rights of recovery. The failure of any **Insured Person** to give the Insurer cooperation and information as required hereunder shall not impair the rights of any other **Insured Person** under this policy.

X.   Section **XIX. SUBROGATION AND RECOVERY** of the General Terms and Conditions is deleted in its entirety and replaced by the following:

To the extent it pays any **Loss**, the Insurer shall be subrogated to all the **Insureds'** rights of recovery. The **Insureds** shall execute all papers necessary to secure such rights, including executing any documents necessary to enable the Insurer effectively to bring suit in their name, and shall take no action that impairs the Insurer's rights of subrogation or recovery.

In no event shall the Insurer exercise its right to subrogate against an **Insured Person** under this policy unless such **Insured Person** (i) has been convicted of a deliberate criminal act by a final non-appealable adjudication in any action or proceeding, other than an action or proceeding initiated by the Insurer to determine coverage under this policy; or, (ii) has been determined to have committed a deliberate fraudulent act by a final non-appealable adjudication in any action or proceeding, other than an action or proceeding initiated by the Insurer to determine coverage under this policy; or, (iii) has been determined to have obtained any personal profit, remuneration or advantage to which such **Insured Person** was not legally entitled as determined by a final non-appealable adjudication in any action or proceeding, other than an action or proceeding initiated by the Insurer to determine coverage under this policy.

In the event the Insurer recovers amounts it paid under this policy, the Insurer will reinstate the Limits of Liability of this policy to the extent of such recovery, less its costs incurred in administering and obtaining such recovery. The Insurer assumes no duty to seek a recovery of any amounts paid under this policy. The Insurer, in its sole and absolute discretion, shall determine the amounts to be credited, if any, toward a reinstatement of the Limits of Liability.

XI.  Section **III. SPECIAL EXCLUSIONS**, 2. **Claims by Insureds**, subparagraph iii., of the Investment Adviser Management Liability Coverage Part, if purchased, is deleted in its entirety and replaced by the following:

iii.  any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, member of a creditors' committee, examiner, liquidator, receiver or rehabilitator for an **Insured Entity**, or any assignee of such trustee, creditors' committee member, examiner, liquidator, receiver or rehabilitator;

© CNA  All Rights Reserved.



**XII.**   Section **III. SPECIAL EXCLUSIONS**, 2. **Claims by Insureds or Investment Adviser**, subparagraph iii., of the Hedge Fund Management and Professional Liability Coverage Part and the Mutual Fund Management and Professional Liability Coverage Part, if purchased, are deleted in their entirety and replaced by the following:

iii.   any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, member of a creditors' committee, examiner, liquidator, receiver or rehabilitator for an **Insured Entity**, or any assignee of such trustee, creditors' committee member, examiner, liquidator, receiver or rehabilitator;

**XIII.**   Section **III. SPECIAL EXCLUSIONS**, Exclusion 2. **Claims By Insureds**, of the Investment Adviser Management Liability Coverage Part, if purchased, is amended by the addition of the following new carveback after the phrase "Provided, however, that this exclusion shall not apply to":

• any **Claim** brought and maintained in a **Foreign Jurisdiction** if the laws of such jurisdiction require the **Insured** to bring such **Claim**;

**XIV.**   Section **III. SPECIAL EXCLUSIONS**, Exclusion 2. **Claims by Insureds or Investment Adviser**, of the Hedge Fund Management and Professional Liability Coverage Part and the Mutual Fund Management and Professional Liability Coverage Part, if purchased, are amended by the addition of the following new carveback after the phrase "provided, however, that this exclusion shall not apply to":

• any **Claim** brought and maintained in a **Foreign Jurisdiction** if the laws of such jurisdiction require the **Insured** to bring such **Claim**;

**XV.**   Section **III. SPECIAL EXCLUSIONS**, Exclusion 1. **Bodily Injury/Property Damage**, of the Investment Adviser Professional Liability Coverage Part, the Hedge Fund Management and Professional Liability Coverage Part and the Mutual Fund Management and Professional Liability Coverage Part, if purchased, are amended by the addition of the following new carveback after the phrase "except that this exclusion shall not apply to":

• libel, slander or defamation arising out of the performance of or failure to perform **Professional Services**;

**XVI.**   The Mutual Fund Management and Professional Liability Coverage Part, if purchased, is amended by the addition of the following new section:

**Fees and Costs for Non-Party Independent Directors**

The Insurer shall reimburse the **Insured** for reasonable and necessary attorneys' fees, legal costs and legal expenses, consented to by the Insurer (such consent not to be unreasonably withheld), and incurred by a non-party **Independent Director** when acting as a witness in a **Claim** (including a **Claim** made against a **Service Provider**). If the **Insured Entity** has indemnified the **Independent Director**, the applicable Retention shall apply to such fees, costs and expenses; if the **Insured Entity** fails or refuses to indemnify the **Independent Director**, no Retention shall apply.

Subject always to the policy level aggregate Limit of Liability stated in Item 6.a. of the Declarations, any payments made pursuant to this endorsement shall further decrease the aggregate Limit of Liability of the Insurer under the Mutual Fund Management and Professional Liability Coverage Part, as stated in Item 6.b. of the Declarations, and shall in no way be construed to increase the available Limit of Liability.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

© CNA  All Rights Reserved.



**AMEND CLAIMS BY INSUREDS EXCLUSION**
**(CREDITORS' COMMITTEE CARVEBACK)**

The changes set forth below are applicable only to the extent that purchased Coverage Parts are included within the scope of this endorsement. The specific Coverage Parts included within the scope of this endorsement are indicated below by a check mark.

☒ Investment Adviser Professional Liability Coverage Part
☒ Investment Adviser Management Liability Coverage Part
☒ Hedge Fund Management and Professional Liability Coverage Part
☐ Mutual Fund Management and Professional Liability Coverage Part

It is understood and agreed that the Policy is amended as follows:

I.     The Investment Adviser Professional Liability Coverage Part, the section entitled **SPECIAL EXCLUSIONS**, the exclusion entitled **Claims by Insureds or Funds**, is amended by the addition of the following new carveback in the section beginning "Provided, however, that this exclusion shall not apply to any **Claim**":

- brought or maintained by or on behalf of a bankruptcy or insolvency trustee, member of a creditors' committee, examiner, liquidator, receiver or rehabilitator for an **Insured Entity**, or any assignee of such trustee, creditors' committee member, examiner, liquidator, receiver or rehabilitator;

II.    The Investment Adviser Management Liability Coverage Part, the section entitled **SPECIAL EXCLUSIONS**, the exclusion entitled **Claims by Insureds**, subparagraph iii., is deleted in its entirety and replaced by the following:

iii.   any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, member of a creditors' committee, examiner, liquidator, receiver or rehabilitator for an **Insured Entity**, or any assignee of such trustee, creditors' committee member, examiner, liquidator, receiver or rehabilitator;

III.   The Hedge Fund Management and Professional Liability Coverage Part, the section entitled **SPECIAL EXCLUSIONS**, the exclusion entitled **Claims by Insureds or Investment Adviser**, subparagraph iii., is deleted in its entirety and replaced by the following:

iii.   any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, member of a creditors' committee, examiner, liquidator, receiver or rehabilitator for an **Insured Entity**, or any assignee of such trustee, creditors' committee member, examiner, liquidator, receiver or rehabilitator;

IV.    The Mutual Fund Management and Professional Liability Coverage Part, the section entitled **SPECIAL EXCLUSIONS**, the exclusion entitled **Claims by Insureds or Investment Adviser**, subparagraph iii., is deleted in its entirety and replaced by the following:

iii.   any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, member of a creditors' committee, examiner, liquidator, receiver or rehabilitator for an **Insured Entity**, or any assignee of such trustee, creditors' committee member, examiner, liquidator, receiver or rehabilitator;

All other terms and conditions of the Policy remain unchanged.

> This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

CNA74048XX (6-13)
Page 1
Continental Casualty Company
Insured Name: Standard General L.P.

Policy No:        425207388
Endorsement No:   4
Effective Date:

© CNA  All Rights Reserved.



### VARIABLE DEFINITION OF RESPONSIBLE PERSON ENDORSEMENT

In consideration of the premium paid for this Policy, it is understood and agreed that the **General Terms and Conditions** are amended as follows:

I.   In Section **II. DEFINITIONS**, the definition of **Responsible Person** is deleted in its entirety.

II.  Section **III. GENERAL POLICY EXCLUSIONS**, paragraph 2. **Illegal Profits/Deliberate Acts**, subparagraph ii. is deleted in its entirety and replaced with the following:

  ii.  only the **Wrongful Acts** of any CEO, CFO and General Counsel of an **Insured Entity** shall be imputed to the **Insured Entity**;

III. Section **VI. NOTICE OF CLAIM/CIRCUMSTANCE AND INTERRELATED CLAIM CLAUSE**, paragraph 1. **Notice of Claim** is deleted in its entirety and replaced with the following:

**Notice of Claim**

The **Insureds** shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of a **Claim** as soon as practicable after a CEO, CFO and General Counsel first becomes aware of such **Claim**, but in no event later than sixty (60) days after the end of the **Policy Period** or the Extended Reporting Period, if applicable. Failure to give such notice as soon as reasonably practicable shall not invalidate coverage of such **Claim** unless the failure to provide timely notice has prejudiced the Insurer or unless the notice is provided after the expiration of the **Policy Period** or any Extended Reporting Period (if applicable).

IV.  Section **VI. NOTICE OF CLAIM/CIRCUMSTANCE AND INTERRELATED CLAIM CLAUSE**, paragraph 2. **Notice of Circumstance** is deleted in its entirety and replaced with the following:

**Notice of Circumstance**

If, during the **Policy Period**, or Extended Reporting Period, as applicable, a CEO, CFO and General Counsel first becomes aware of any facts or circumstances that may reasonably be expected to give rise to a **Claim** and during such period give written notice to the Insurer of:

  a.  the **Wrongful Act** allegations anticipated as the basis of the potential **Claim** and the names of any potential claimants;
  b.  the identity of the specific **Insureds** allegedly responsible for such **Wrongful Act**;
  c.  the consequences that have resulted or may result from such **Wrongful Act**;
  d.  the nature of the potential monetary damages or non-monetary relief that may be sought in consequence of such specific **Wrongful Act**; and
  e.  the circumstances by which **Insureds** first became aware of such **Wrongful Act**;

then any **Claim** otherwise covered pursuant to this policy that is subsequently made and that arises out of such **Wrongful Act** shall be deemed to have been first made against an **Insured** and reported to the Insurer by an **Insured** at the time such written notice was received by the Insurer.

No coverage is provided for fees and expenses incurred prior to the time such **Wrongful Act** results in a **Claim**, even if such amount also benefits the defense of a covered **Claim** or such **Wrongful Act** subsequently gives rise to a **Claim**.

V.   Section **X. APPLICATION**, paragraph b. is deleted in its entirety and replaced with the following:

  b.  this policy shall be void from inception as to the **Insured Entity** if any CEO, CFO and General Counsel knew as of the effective date of the policy the facts that were misrepresented or omitted, whether or not such person knew of such untruthful disclosure in the **Application**.

CNA72260XX (12-12)
Page 1
Continental Casualty Company
Insured Name: Standard General L.P.

Policy No:   425207388
Endorsement No:   5
Effective Date:

© CNA  All Rights Reserved.



All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.



**AMEND ILLEGAL PROFITS/DELIBERATE ACTS EXCLUSION ENDORSEMENT
(VARIABLE RESPONSIBLE PERSONS)**

It is understood and agreed that the **GENERAL TERMS AND CONDITIONS**, the Section entitled **GENERAL POLICY EXCLUSIONS**, the exclusion entitled **Illegal Profits/Deliberate Acts**, subparagraph ii. is deleted in its entirety and replaced with the following:

    ii.    only the **Wrongful Acts** of any chair of the Board of Directors, president, chief executive officer, chief financial officer or general counsel (or equivalent position) of an **Insured Entity** shall be imputed to the **Insured Entity**;

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

CNA75641XX (8-13)                                        Policy No:   425207388
Page 1                                                Endorsement No:  6
Continental Casualty Company                        Effective Date:
Insured Name: Standard General L.P.

© CNA  All Rights Reserved.



**SCHEDULE OF HEDGE FUNDS**

In consideration of the premium charged, it is agreed that the following are **Hedge Funds** insured under the **Hedge Fund Management and Professional Liability Coverage Part:**

Standard General Master Fund L.P.
Standard General Focus Fund L.P.
Standard General Offshore Fund Ltd.
Standard General Fund L.P.
Standard General O.C. Master Fund L.P.
Standard General O.C. Offshore Fund Ltd.
SG I&A Fund Ltd.
Standard Broadcasting Master Fund L.P.
Standard Broadcasting L.P.
Standard Broadcasting I L.P.
Standard Broadcasting II L.P.
Standard Broadcasting Ltd.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

© CNA  All Rights Reserved.



### DELETE POLLUTION EXCLUSION ENDORSEMENT

It is understood and agreed that the Policy is amended as follows:

- Solely with respect to the Coverage Parts set forth in the Schedule below, the General Terms and Conditions, the Section entitled **GENERAL POLICY EXCLUSIONS**, the exclusion entitled **Pollution**, is deleted in its entirety.

  SCHEDULE OF COVERAGE PARTS

  Investment Adviser Management Liability Coverage Part
  Hedge Fund Management and Professional Liability Coverage Part
  Investment Adviser Professional Liability Coverage Part

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

© CNA  All Rights Reserved.



**AMEND EXTENDED REPORTING PERIOD ELECTION PERIOD ENDORSEMENT**

In consideration of the premium paid, it is hereby understood and agreed that the General Terms & Conditions, the Section entitled **EXTENDED REPORTING PERIOD**, the Paragraph entitled **Payment of Extended Reported Period Premium** is amended to delete the phrase "within 30 days" and replace it with the following:

"within 45 days"

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

CNA74119XX (6-13)
Page 1
Continental Casualty Company
Insured Name: Standard General L.P.

Policy No:   425207388
Endorsement No:   9
Effective Date:

© CNA  All Rights Reserved.



**AMEND CLAIMS BY INSUREDS ENDORSEMENT**
**(CARVEBACK FOR HEDGE FUND EXECUTIVE LIABILITY BASED UPON INDEPENDENT OPINION)**

In consideration of the premium paid, it is understood and agreed that the Hedge Fund Management and Professional Liability Coverage Part, the section entitled **EXCLUSIONS**, the exclusion entitled **Claims By Insureds or Investment Advisor**, is amended to add the following new paragraph after the sentence that reads, "Provided, however, that this exclusion shall not apply to:"

- Any such **Claim** brought by a **Hedge Fund** and in the opinion of an independent counsel selected jointly by the **Insured Entity** and the Insurer, failure to make such **Claim** would result in liability upon any **Executive** of such **Hedge Fund**.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

CNA73969XX (5-13)                                              Policy No:    425207388
Page 1                                                     Endorsement No:   10
Continental Casualty Company                                  Effective Date:
Insured Name: Standard General L.P.

© CNA  All Rights Reserved.



## AMEND NO ACTION AGAINST INSURER ENDORSEMENT

It is understood and agreed the Policy is amended as follows:

I.  The General Terms and Conditions, the section entitled **NO ACTION AGAINST INSURER**, paragraph 1, is deleted in its entirety and replaced with the following:

   1.  No action shall be taken against the Insurer unless, as a condition of precedent, there shall have been full compliance with all the provisions of this policy.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

CNA74107XX (6-13)
Page 1
Continental Casualty Company
Insured Name: Standard General L.P.

Policy No:  425207388
Endorsement No:  11
Effective Date:

© CNA  All Rights Reserved.



## PRIVATE COMPANY ENDORSEMENT

In consideration of the premium paid for this Policy, it is agreed that solely with respect to any Private Company and its **Insured Persons**, the Policy is amended as follows:

1.  The **Investment Adviser Management Liability Coverage Part**, the section entitled **INSURING AGREEMENTS**, the paragraph entitled **Insured Entity Securities Liability** is deleted in its entirety and replaced as follows:

    <u>Insured Entity Liability</u>

    The Insurer shall pay on behalf of the **Insured Entity** that **Loss** resulting from any **Claim** first made against the **Insured Entity** during the **Policy Period** or Extending Reporting Period, if applicable, for a **Wrongful Act**.

2.  The **Investment Adviser Management Liability Coverage Part**, the section entitled **SPECIAL DEFINITIONS** is amended to add the following new definitions:

    **Not-For-Profit Outside Entity** means any entity, other than an **Insured Entity**, exempt from federal income taxation pursuant to 26 U.S.C. §501(c)(3), as amended.

    **Outside Entity** means any **Not-For-Profit Outside Entity**.

    **Outside Entity Executive** means an **Executive** of an **Insured Entity** who is or was acting as an **Executive** in any **Not-For-Profit Outside Entity**, provided and so long as such service is at the specific request, consent or direction of the **Insured Entity**.

3.  In the **Investment Adviser Management Liability Coverage Part**, the section entitled **SPECIAL DEFINITIONS**, the definitions of **Insured Person** and **Wrongful Act** are amended as follows:

    A.  The definition of **Insured Person** is amended to add the following new sentence:

        **Insured Person** also means any **Outside Entity Executive**.

    B.  The definition of **Wrongful Act** is deleted in its entirety and replaced with the following:

        **Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by:
        1.  an **Executive** in his or her capacity as such, or any matter claimed against such **Executive** solely by reason of his or her status as such;
        2.  an **Employee** in his or her capacity as such, or any matter claimed against such **Employee** solely by reason of his or her status as such;
        3.  an **Insured Entity**;
        4.  an **Outside Entity Executive**, solely in his or her capacity as such, or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; or
        5.  an **Insured Person**, where such **Wrongful Act** is a **Wrongful Employment Practice**.

4.  The **Investment Adviser Management Liability Coverage Part**, the section entitled **SPECIAL EXCLUSIONS** is amended by the addition of the following:

    - **Publishing Liability**

        for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, trade secret or any other intellectual property rights, except that this exclusion shall not apply to any **Securities Claim**;

    - **Professional Services**

---

CNA72440XX (1-13)  
Page 1  
Continental Casualty Company  
Insured Name: Standard General L.P.

Policy No:   425207388  
Endorsement No:   12  
Effective Date:

© CNA  All Rights Reserved.



for the rendering or failure to render professional services to a customer or client of the **Insured Entity**;

- **Securities**

   based upon or arising out of, or in any way involving:

   a.  the public offer, sale, offer to sell, solicitation or distribution of securities issued by the **Insured Entity** or any **Subsidiary**; or
   b.  the actual or alleged violation of any federal, state, local or provincial statute relating to securities or any rules or regulations promulgated thereunder if such violation actually or allegedly occurred after a transaction described in a. above;

   However, if within 30 days prior to the effective date of any public offering of securities (whether or not exempted by section 3(b) of the Securities Act of 1933) the **Insureds** give the Insurer written notice of such public offering together with full particulars and underwriting information required thereto, then the Insurer may, at its sole option, agree in writing to provide coverage for such public offerings provided the **Insureds** accept such terms, conditions and additional premium as may be required by the Insurer for such coverage;

- **Wrongful Employment Practices**

   solely with respect to the **Insured Entity**, based on or arising out of, or in any way involving any **Wrongful Employment Practice**.

5. The **Investment Management Liability Solutions' General Terms and Conditions**, the section entitled **GENERAL POLICY EXCLUSIONS**, the exclusion entitled **Violation of Law** is amended by the addition of the following:

- for any actual or alleged violation of any law by the **Insured Entity**, whether statutory, regulatory or common law, respecting any of the following activities: antitrust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

© CNA  All Rights Reserved.

Error! Not a valid link.

## POLICYHOLDER NOTICE

Ethics and proper business conduct has been the cornerstone of CNA since 1897. While much has changed during the last century, our commitment to these core values has not wavered. We strongly believe that proper business conduct is more than the practice of avoiding wrong; it is also a matter of choosing to do right. Nowhere is this more essential than helping in the fight against terrorism. As such, we are committed to complying with U.S. Department of Treasury Office of Foreign Asset Control (OFAC) requirements.

Through a variety of laws, OFAC administers and enforces economic sanctions against countries and groups of individuals, such as terrorists and narcotics traffickers. These laws prohibit all United States citizens (including corporations and other entities) and permanent residents from engaging in transactions with sanctioned countries and with individuals and entities on the Specially Designated Nationals (SDN) list. Because all U.S. citizens and companies are subject to this law, we wanted to be sure you were aware of its scope and restrictions. If you haven't already done so, you may want to consider discussing this issue with your legal counsel to ensure you are in compliance.

For insurance companies, accepting premium from, issuing a policy to, insuring property of, or making a claim payment to an individual or entity that is the subject of U.S.-imposed economic sanctions or trade embargoes usually are violations of these laws and regulations. Fines for violating OFAC requirements can be substantial. CNA has established an OFAC compliance program part which includes the use of exclusionary policy language. We believe this makes good business sense for CNA and you.

Our records indicate that you have insurance coverage coming up for renewal with us. The purpose of this letter is to advise you that your renewal policy includes OFAC exclusionary policy language, which may reduce or eliminate certain coverage. Specifically, if it is determined that your policy violates certain Federal or State laws or regulations, such as the U.S. list of Specially Designated Nationals or Blocked Persons (organizations or individuals associated with terrorist groups), any term or condition of your policy will be null and void to the extent it violates the applicable laws or regulations of the United States.

We're sure you share our commitment to compliance and thank you for your cooperation.

Your policy language reads as follows:

## ECONOMIC AND TRADE SANCTIONS CONDITION

The following condition is added to the Policy:

## ECONOMIC AND TRADE SANCTIONS CONDITION

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1.  Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2.  Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3.  Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

4.  Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

ENDORSEMENT NUMBER: 13
POLICY NUMBER: 425207388
ISSUED TO: Standard General L.P.

G-145125-A  (ED. 08/03)
Page 1 of 2

**Error! Not a valid link.**

5.     Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

---

ENDORSEMENT NUMBER: 13
POLICY NUMBER: 425207388
ISSUED TO: Standard General L.P.
EFFECTIVE DATE OF ENDORSEMENT:

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown above.

By Authorized Representative _____
(No signature is required if this endorsement is issued with the Policy or if it is effective on the Policy Effective Date)



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ECONOMIC AND TRADE SANCTIONS CONDITION**

The following condition is added to the Policy:

**ECONOMIC AND TRADE SANCTIONS CONDITION**

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

1.    Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

2.    Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

3.    Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

4.    Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

5.    Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to U.S. economic or trade sanctions.

As used in this endorsement a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

ENDORSEMENT NUMBER: 14
POLICY NUMBER: 425207388
ISSUED TO: Standard General L.P.
EFFECTIVE DATE OF ENDORSEMENT:

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown above.

By Authorized Representative _____
(No signature is required if this endorsement is issued with the Policy or if it is effective on the Policy Effective Date)

G-145184-A (Ed. 6/03)
Page 1 of 1



**If the risk is classified as a Class 1 or Class 2, the following Notice applies:**

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**If the risk is classified as a Class 3, the following Notice applies:**

**NOTICE: THESE POLICY FORMS ARE NOT SUBJECT TO THE APPROVAL REQUIREMENTS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**INVESTMENT MANAGEMENT LIABILITY SOLUTIONS NEW YORK FREE TRADE ZONE ENDORSEMENT**

In consideration of the premium paid for this Policy, it is understood and agreed that the **General Terms and Conditions** is amended as follows:

I.  The following notice is added at the top:

**NOTICE: DEFENSE COSTS SHALL BE APPLIED TO, AND ACT AS A REDUCTION OF, UP TO 100% OF THE LIMITS OF INSURANCE. THIS COULD THEN RESULT IN SUCH LIMIT OF INSURANCE BECOMING COMPLETELY EXHAUSTED BY THE PAYMENT OF DEFENSE COSTS. THE INSURER SHALL NOT BE LIABLE FOR ANY DEFENSE COSTS OR DAMAGES AFTER THE EXHAUSTION OF THE LIMITS OF INSURANCE.**

II.  The Section entitled **DEFINITIONS** is amended to add the following new definitions:

**Claims-made Relationship** means that period of time between the effective date of the first claims-made policy between the Insurer and the **Named Insured** and the cancellation or nonrenewal of the last consecutive claims-made policy between the Insurer and the **Named Insured**, where there has been no gap in coverage, but does not include any period covered by Extended Reporting Period coverage.

**Termination of Coverage** means, whether made by the Insurer or the **Named Insured** at any time:

1.  cancellation or nonrenewal of a policy; or

2.  decrease in limits, reduction of coverage, increased deductible or self-insured retention, new exclusion, or any other change in coverage less favorable to the **Insured**.

---

CNA72709NYFTZ (4-13)  
Page 1  
Continental Casualty Company  
Insured Name: Standard General L.P.

Policy No:   425207388  
Endorsement No:   15  
Effective Date:

© CNA  All Rights Reserved.



III.   The Section entitled **DEFINITIONS**, the definitions of **Loss** and **Pollutants** are deleted in their entirety and replaced with the following:

**Loss** means those amounts that any **Insured** is legally obligated to pay as awards, settlements, judgments (including any award of pre-judgment and post-judgment interest on a covered judgment), **Defense Costs** and **Sox 304/Dodd Frank 954 Costs**, unless stated to the contrary in any Coverage Part.

Notwithstanding anything to the contrary below, **Loss** shall include (subject always to this policy's other terms, conditions and limitations):

1.   penalties assessed against any **Insured Person** pursuant to the Foreign Corrupt Practices Act, 15 U.S.C. Sec. 78dd-2(g)(2)(B); and

2.   solely with respect to the Investment Advisor Management Liability Coverage Part (if designated as "Included" in Item 6.b. of the Declarations and attached hereto), awards, settlements or judgments for which any **Insured** is liable pursuant to Section 11, 12 or 15 of the Securities Act of 1933, as amended.

Enforceability of paragraphs 1. and 2. above shall be governed by such applicable law that most favors coverage for **Loss**.

However, **Loss** (other than **Defense Costs**) shall not include:

i.   fines, penalties or taxes imposed by law;

ii.   matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed;

ii.   any amount for which an **Insured** is absolved from payment by reason of any covenant, agreement or court order;

v.   the payment of any dividends or other distributions of corporate profits of the **Insured Entity** to any shareholder of the **Insured Entity**;

v.   any amount which constitutes disgorgement, including restitution; or

vi.   compensation earned by the claimant in the course of employment but unpaid by any **Insured**, including salary, wages, commissions, bonus or incentive compensation.

In the event of an **Inadequate Consideration Claim**, **Loss** with respect to such **Claim** shall not include any amount of any awards, settlements or judgments representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to any **Non-Indemnifiable Loss** in connection with such **Claim**.

**Pollutants** means any substance exhibiting hazardous characteristics as is or may be defined or identified on any list of hazardous substances issued by the United States Environmental Protection Agency or any state, local or foreign counterpart. **Pollutants** also means, without limitation, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste (including materials to be recycled, reconditioned or reclaimed), as well as any air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products.

IV.   The Section entitled **GENERAL POLICY EXCLUSIONS** is amended as follows:

1.   The title of the exclusion entitled **Illegal Profits/Deliberate Acts** is deleted in its entirety and replaced by the title **Illegal Profits/Fraudulent Acts**.

2.   The exclusion entitled **Pollution** is deleted in its entirety and replaced with the following:

CNA72709NYFTZ (4-13)
Page 2
Continental Casualty Company
Insured Name: Standard General L.P.

Policy No:   425207388
Endorsement No:   15
Effective Date:

© CNA  All Rights Reserved.



**Pollution**

based upon or arising out of:

a.  any actual, alleged or threatened discharge, release, escape, or disposal of, or exposure to, **Pollutants**;

b.  any request, direction or order that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of **Pollutants**, or any voluntary decision to do so;

c.  or any actual or alleged property damage, or bodily injury, sickness, disease or death of any person, or financial loss to the **Insured Entity**, its security holders, or its creditors resulting from any of the aforementioned matters.

However, this exclusion shall not apply to any **Non-Indemnifiable Loss** incurred by an **Insured Person**;

3.  The following exclusion is added:

**Nuclear**

based upon or arising out of:

a.  any nuclear reaction, radiation or contamination;

b.  any request, direction or order that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of any nuclear reaction, radiation or contamination, or any voluntary decision to do so;

c.  or any actual or alleged property damage, or bodily injury, sickness, disease or death of any person, or financial loss to the **Insured Entity**, its security holders, or its creditors, resulting from any of the aforementioned matters.

However, this exclusion shall not apply to any **Non-Indemnifiable Loss** incurred by an **Insured Person**;

V.  The Section entitled **LIMIT OF LIABILITY/RETENTION/PRESUMPTIVE INDEMNIFICATION** is amended as follows:

1.  The subsection entitled **Retention**, paragraph a. is deleted in its entirety.

2.  The subsection entitled **Retention** is amended to add the following:

a.  Solely with respect to **Non-Indemnifiable Loss**, the individual retention for each director and officer is as set forth below:

Each **Insured Person** who is a director or officer of the **Insured Entity** and who has been found liable or who has been included in a settlement, must pay the applicable individual retention as set forth below. However, in the event that the total of such individual retention amounts exceeds the applicable aggregate retention amount set forth below, then such aggregate retention amount shall be divided by the total number of such directors and officers to determine the revised individual retention amount. However, in no event can the revised individual retention amount be less than 75% of the applicable individual retention amount set forth below.

Subject to Section 72.4 of Regulation 110 or as such law may be amended, the Minimum Schedule shall be applied as follows:

© CNA  All Rights Reserved.



For corporations subject to the Banking Law ("B.L.") or the Business Corporation Law "B.C.L.":

MINIMUM RETENTION AMOUNTS

| Type of Corporation | Individual Retention | Aggregate |
|---|---|---|
| (1) assets greater than $20,000,000 | $5,000 | $50,000 |
| (2) assets greater than $10,000,000 Up to $20,000,000 | $4,000 | $40,000 |
| (3) assets greater than $5,000,000 Up to $10,000,000 | $3,000 | $30,000 |
| (4) assets of $5,000,000 or less | $2000 | $20,000 |

For corporations subject to the Cooperative Corporations Law, the Religious Corporations Law or the Not-for-Profit Corporation Law ("N-PCL"):

MINIMUM RETENTION AMOUNTS

| Type of Corporation | Individual Retention | Aggregate |
|---|---|---|
| (1) subject to Cooperative Corporations Law | $100 | $1,000 |
| (2) subject to Religious Corporations Law | $100 | $1,000 |
| (3) subject to Not-for-Profit Corporation Law | $100 | $1,000 |

b.    In accordance with New York State Laws B.C.L. section 726(a)(3), N-PCL section 726(a)(3) or B.L. Section 7023(a)(3), or as such laws may be amended, each of the directors and officers shall be a coinsurer of any **Non-Indemnifiable Loss** (in excess of any applicable retention amount) for the applicable minimum coinsurance percentage amount set forth below for the first $1,000,000 of such **Non-Indemnifiable Loss**.

Subject to Section 72.4 of Regulation 110 or as such law may be amended, the Minimum Schedule shall be applied as follows:

For corporations subject to the B.L. or the B.C.L.:

| Type of Corporation | Minimum Coinsurance % |
|---|---|
| (1) assets greater than $20,000,000 | 0.5% |
| (2) assets greater than $10,000,000 Up to $20,000,000 | 0.4% |
| (3) assets greater than $5,000,000 Up to $10,000,000 | 0.3% |
| (4) assets of $5,000,000 or less | 0.2% |

For corporations subject to the Cooperative Corporations Law, the Religious Corporations Law or the N-PCL:

| Type of Corporation | Minimum Coinsurance % |
|---|---|
| (1) subject to Cooperative Corporations Law | 0.1% |
| (2) subject to Religious Corporations Law | 0.1% |
| (3) subject to Not-for-Profit Corporation Law | 0.1% |
| (1) subject to Cooperative Corporations Law | 0.1% |

VI.    The Section entitled **SETTLEMENT/DEFENSE OF CLAIMS/ ALLOCATION OF LOSS/ADVANCEMENT OF DEFENSE COSTS**, the subsection entitled **Defense of Claims** is amended to add the following:

© CNA  All Rights Reserved.



With respect to the payment of **Defense Costs** in connection with a formal regulatory proceeding (civil, criminal or administrative) against or formal investigation of an **Insured**, nothing in this policy shall be construed to prevent the **Insured** from making a complaint to the appropriate New York Appellate Division or other body designated by the New York Appellate Division to investigate complaints in accordance with New York Judiciary Law Section 90, or to the appropriate disciplinary body in the state where the legal service is being provided.

VII. The Section entitled **NOTICE OF CLAIM/ CIRCUMSTANCE AND INTERRELATED CLAIM CLAUSE** is amended as follows:

1. The subsection entitled **Notice of Claim** is deleted in its entirety and replaced with the following:

   **Notice of Claim**

   The **Insureds** shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer or the Insurer's licensed agent of a **Claim** as soon as practicable after a **Responsible Person** first becomes aware of such **Claim**, but in no event later than sixty (60) days after the end of the **Policy Period** or the Extended Reporting Period, if applicable. Failure to give such notice as soon as reasonably practical shall not invalidate coverage of such **Claim**, unless the failure to provide timely notice has prejudiced the Insurer or unless the notice is provided after the expiration of the **Policy Period**, any renewal policy period and any Extended Reporting Period. However, failure to give any notice required to be given by this Policy within the time prescribed therein shall not invalidate coverage for any **Claim** if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter.

2. The first paragraph of the subsection entitled **Notice of Circumstances** is amended to add the phrase "or its licensed agent" after the word "Insurer".

3. The subsection entitled **Interrelated Claims**, paragraph b. is amended to add the phrase "or its licensed agent" after the word "Insurer".

4. The subsection entitled **To Whom Notices are Sent** is amended to add the phrase "or its licensed agent" after the word "Insurer".

VIII. The Section entitled **EXTENDED REPORTING PERIOD** is deleted in its entirety and replaced with the following:

**EXTENDED REPORTING PERIOD**

As used herein, **"Extended Reporting Period"** means the period of time after the end of the **Policy Period** for reporting **Claims** that are made against the **Insured** during the applicable **Extended Reporting Period** by reason of an act or omission that occurred prior to the end of the **Policy Period** and is otherwise covered by this policy.

1. The provisions of the **Extended Reporting Period** coverage will not apply, except for the sixty (60) day automatic **Extended Reporting Period** if the **Claims-Made Relationship** has been less than one year and this policy has been terminated for nonpayment of premium or fraud.

2. In the event of **Termination of Coverage**, or if this policy is renewed under terms and conditions less favorable to the **Named Insured** than those contained in the preceding policy, a sixty (60) day automatic **Extended Reporting Period** will be granted to the **Named Insured** at no charge in which any **Claim** reported will be considered as having been made before the termination date of this policy Upon **Termination of Coverage**, the aggregate limit of liability for this automatic **Extended Reporting Period** shall be equal to the amount remaining in this policy's annual aggregate liability limit.

3. Within thirty (30) days after termination, the Insurer will notify the **Named Insured**, in writing, of the automatic sixty (60) day **Extended Reporting Period**. The Insurer will also notify the **Named Insured** of the availability of, the premium for, and the importance of purchasing an additional **Extended Reporting Period**. If the **Claims-Made Relationship** has been in effect for one year or more, and if this policy has

CNA72709NYFTZ (4-13)                                                    Policy No:        425207388
Page 5                                                                 Endorsement No:   15
Continental Casualty Company                                           Effective Date:
Insured Name: Standard General L.P.

© CNA  All Rights Reserved.



been terminated for nonpayment of premium or fraud, the Insurer shall not be required to provide a premium quotation unless requested by the **Insured**.

4.  The **Named Insured** shall have the greater of sixty (60) days from the effective date of **Termination of Coverage** or thirty (30) days from the date of mailing or delivery of the advice of the availability to purchase additional **Extended Reporting Period** coverage, to submit written acceptance of the **Extended Reporting Period** coverage. The premium for such additional **Extended Reporting Period** must be paid promptly when due. The premium shall be fully earned at the inception of this endorsement.

5.  If the **Named Insured** has been placed in receivership, liquidation or bankruptcy, or permanently ceases operations, then any one qualifying as an **Insured** has the right to an **Extended Reporting Period** coverage issued in the name of the **Named Insured** for the benefit of all **Insureds**. The request for such **Extended Reporting Period** coverage must be made within one hundred and twenty (120) days of the **Termination of Coverage**.

6.  Only one such **Extended Reporting Period** coverage endorsement shall be issued and the **Extended Reporting Period** for such coverage shall be one year or three years. This period includes the automatic sixty (60) day period specified in Item 3. above.

7.  The additional premium for the additional **Extended Reporting Period** shall be based upon the rates for such coverage in effect on the date this policy was issued or last renewed and shall be for one (1) year at 50% of such premium; or three (3) years at 130% of such premium.

8.  Upon **Termination of Coverage**:

    a.  any return premium due the **Named Insured** shall be credited toward the premium for the additional **Extended Reporting Period** coverage if the **Named Insured** elects such coverage.

    b.  where premium is due to the Insurer for coverage during the **Claims-Made Relationship**, any monies received by the Insurer from the **Named Insured** as payment for the **Extended Reporting Period** coverage shall first be applied to such premium owing for this policy.

9.  Limits of liability for such additional **Extended Reporting Period** shall be:

    a.  at least equal to 100 percent of the policy's annual aggregate limit where a **Claims-Made Relationship** has continued for three years or more; or

    b.  if the **Claims-Made Relationship** has continued for less than three years, the limit of liability shall be at least equal to the greater of:

        i.   the amount of coverage remaining in such policy's annual aggregate liability limit, or

        ii.  50 percent of such policy's annual aggregate liability limit.

10. **Extended Reporting Period** coverage ends at the same time as the last installment period for which premium has been paid the **Named Insured** fails to pay the premium when due for the next installment period.

IX.   The Section entitled **CANCELLATION** is deleted in its entirety and replaced with the following:

**CANCELLATION/NON-RENEWAL**

1.  **Cancellation**

    a.  This policy may be canceled by the **Named Insured** by surrendering it to the Insurer or any of its authorized agents. The **Named Insured** may also cancel this policy by written notice to the Insurer or the Insurer's licensed agent stating at what future date cancellation is to be effective.

CNA72709NYFTZ (4-13)
Page 6
Continental Casualty Company
Insured Name: Standard General L.P.

Policy No:       425207388
Endorsement No:   15
Effective Date:

© CNA  All Rights Reserved.



b.    If this policy has been in effect for sixty (60) days or less, this policy may be canceled by the Insurer by mailing or delivering to the **Named Insured** written notice stating the reason for cancellation at the mailing address shown on the Declarations, and to its authorized agent or broker at least:

    i.    twenty (20) days before the effective date of cancellation if this policy is canceled for any reason not included in paragraph ii. below;

    ii.   fifteen (15) days before the effective date of cancellation if this policy is canceled for any of the following reasons:

        (a)    Non-payment of premium provided; however, a notice of cancellation on this ground shall inform the **Insured** of the amount due;

        (b)    conviction of a crime arising out of acts increasing the hazard insured against;

        (c)    any discovery of fraud or material misrepresentation in the obtaining of this policy or in the presentation of a **Claim**;

        (d)    after issuance of this policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current **Policy Period**;

        (e)    material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of this policy, which causes the risk of loss to be substantially and materially increased beyond that contemplated at the time this policy was issued or last renewed;

        (f)    a determination by the New York State Superintendent of Insurance that continuation of the present premium volume of the Insurer would jeopardize the Insurer's solvency or be hazardous to the interest of the Insurer's policyholders, creditors or the public; or

        (g)    a determination by such Superintendent that the continuation of this policy would violate, or would place the Insurer in violation of, any provision of the New York Insurance Code,

c.    If this policy has been in effect for more than sixty (60) days, or if this policy is a renewal or continuation of a policy issued by the Insurer, this policy may be canceled by the Insurer only for any reasons listed in paragraph b.ii. above provided a written notice stating the reason for cancellation is mailed or delivered to the **Named Insured** at the address shown in the Declarations, and its authorized agent or broker at least fifteen (15) days before the effective date of cancellation.

d.    Notice of cancellation will state the effective date of cancellation. The **Policy Period** will end on this date. If notice is mailed, proof of mailing will be sufficient proof of notice.

e.    If the **Named Insured** cancels, earned premium will be computed in accordance with the customary short rate table and procedure. If the Insurer cancels, earned premium shall be computed pro rata. However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, the Insurer will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

© CNA  All Rights Reserved.



f.   If one of the reasons for cancellation set forth in paragraph b.ii. exists, the Insurer may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

2.   **Non-Renewal/Conditional Non-Renewal**

a.   If the Insurer elects not to renew this policy, the Insurer shall send notice as provided in paragraph c. below along with the reason for nonrenewal.

b.   If the Insurer conditions renewal of this policy upon:

i.   change of limits;

ii.   change in type of coverage;

iii.   reduction of coverage;

iv.   increased deductible;

vi.   addition of exclusion;

vi.   increased premiums in excess of 10%, exclusive of any premium increased due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit; the Insurer shall send notice as provided in paragraph c.ii. below.

c.   Notice of nonrenewal and conditional renewal will be provided as follows:

i.   If the Insurer decides not to renew this policy or to conditionally renew this policy as provided in paragraphs a. and b. above, the Insurer shall mail or deliver written notice to the **Named Insured** at least sixty (60) days, but not more than one hundred twenty (120) days, before the expiration date or, if this is a continuous policy, the anniversary date.

ii.   Notice will be mailed or delivered to the **Named Insured** at the address shown in the Declarations and its authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

iii.   The Insurer will not send the **Named Insured** notice of non-renewal or conditional renewal if the **Named Insured** or its authorized agent or broker or another insurer of the **Named Insured** mails or delivers notice that this Policy has been replaced or no longer desired.

d.   If the Insurer violates any of the provisions of this subsection by sending the **Named Insured** an incomplete or late conditional notice:

i.   Coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until sixty (60) days after such notice is mailed or delivered, unless the **Named Insured**, during this sixty (60) day period, has replaced the coverage or elects to cancel.

ii.   On or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this Policy for another policy period, at the lower of the current rates or the prior period's rates, unless the **Named Insured,** during the additional policy period, has replaced the coverage or elects to cancel.

Policy No:   425207388
Endorsement No:   15
Effective Date:

© CNA  All Rights Reserved.



X.   The Section entitled **NO ACTION AGAINST INSURER**, subsection 1. is deleted in its entirety and replaced with the following:

No action shall be taken against the Insurer unless, as a condition precedent, there shall have been full compliance with all the provisions of this policy nor until the amount of an **Insured's** obligation to pay shall have been determined either by judgment against such **Insured** or by written agreement of such **Insured**, the claimant and the Insurer.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

NYFTZ Class Code:     2-14076

CNA72709NYFTZ (4-13)                                                     Policy No:     425207388
Page 9                                                                   Endorsement No:   15
Continental Casualty Company                                             Effective Date:
Insured Name: Standard General L.P.

© CNA  All Rights Reserved.



## REVISION TO NOTICE REQUIREMENTS - CLAIMS MADE FORMS

It is understood and agreed that the Policy is amended to add the following:

1.  Failure to give any notice required to be given by this Policy within the time prescribed herein shall not invalidate coverage of any claim, unless the failure to provide timely notice has prejudiced us or unless the notice is provided after the expiration of the policy period, any renewal policy period and any extended reporting period. However, failure to give any notice required to be given by this Policy within the time prescribed therein shall not invalidate any claim made by the insured or by any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible thereafter.

2.  Notwithstanding any provision in this Policy to the contrary, with respect to any claim alleging death or personal injury, if we disclaim liability or deny coverage based upon the failure to provide timely notice, then the injured person, someone acting for the injured person or other claimant may bring an action against us, provided the sole question is whether such disclaimer or denial is based on the failure to provide timely notice.

    However, the injured person, someone acting for the injured person or other claimant may not bring an action if within 60 days after we deny coverage, or do not admit liability, we or any insured under the policy:

    (a)  brings an action to declare the rights of the parties under the policy; and

    (b)  names the injured person, someone acting for the injured person or other claimant as a party to the action.

As used herein, the words "we" "us" or "our" refer to the insurer named on the Declarations.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By Authorized Representative _____
(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

GSL11893NY (3-09)
Page 1
Continental Casualty Company
Insured Name: Standard General L.P.

Policy No:  425207388
Endorsement No:  16
Effective Date:  09/01/2014

© CNA  All Rights Reserved.



**OUTSIDE DIRECTORSHIP LIABILITY ENDORSEMENT**
**FOR PROFIT ENTITY**
**(DOUBLE EXCESS)**

In consideration of the premium paid for this Policy, it is understood and agreed that the **Investment Adviser Management Liability Coverage Part** is amended as follows:

1.   The section entitled **INSURING AGREEMENTS,** the Insuring Agreement entitled **Management Liability (Individual)** is amended to add the following:

The Insurer shall pay **Loss** on behalf of an **Insured Person** resulting from any **Claim** first made against such **Insured Person** during the **Policy Period** or Extended Reporting Period, if applicable, for any **Wrongful Act** of **Executive** of the **Insured Entity** while serving in an **Outside Position** for a **Outside Entity**; provided that any such coverage shall be specifically excess of any indemnification from, and any insurance provided by the **Outside Entity**.

2.   The section entitled **SPECIAL DEFINITIONS** is amended to add the following new definitions:

**Outside Position** means the position of director, officer, trustee, regent or governor held by an **Executive** of the **Insured Entity** for any **Outside Entity**, provided and so long as such service is part of such individual's regularly assigned duties with the **Insured Entity** and is at the request or direction of, or with the knowledge and consent of, the **Insured Entity**.

**For-Profit Outside Entity** means the organization specifically scheduled below.

Schedule for **For-Profit Outside Entities**:

ALST Casino Holdco LLC
North Atlantic Trading Co Inc
American Apparel
Media General Inc.
General Wireless

**Not-For-Profit Outside Entity** means any organization exempt from federal income taxation pursuant to 26 U.S.C. §501(c)(3), as amended.

**Outside Entity** means any **Not-For Profit Outside Entity** or any **For-Profit Outside Entity**.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.



### COST OF CORRECTIONS LIABILITY ENDORSEMENT

In consideration of the premium paid for this policy, it is understood and agreed that, solely with respect to the Investment Adviser Professional Liability, Investment Adviser Management Liability, Hedge Fund Management and Professional Coverage Part, the policy is amended as follows:

I.      The **INSURING AGREEMENTS** section of the Coverage Part indicated above is amended by the addition of the following new Insuring Agreement:

- **Cost of Corrections Liability**

    If, during the **Policy Period**:

    a.      a demand is made by the **Insureds** to the Insurer to pay a specified monetary amount incurred by the **Insured Entity** in an effort to resolve a known **Wrongful Act** before it gives rise to a **Claim** against the **Insureds**; and

    b.      the Insurer, in its sole judgment, determines that such **Wrongful Act** was likely to give rise to a covered **Claim**;

    then the Insurer shall reimburse the **Insured Entity** for that portion of such monetary amounts that the Insurer, in its sole judgment, determines were reasonable expenditures to avoid a **Claim** arising from such **Wrongful Act**.

II.     Solely with respect to the coverage provided by this endorsement, the **SPECIAL EXCLUSIONS** section of the Coverage Part indicated above is amended by the addition of the following:

- The Insurer shall not be liable to pay any damages or amounts under the Cost of Corrections Liability Insuring Agreement:

    a.      based upon, arising out of, or in any way involving a **Wrongful Act** which, prior to the effective date of the policy, was known to the **Insureds** and was reasonably likely to result in, or had resulted in, financial loss to any clients or customers of the **Insureds**;

    b.      arising out of the **Insured's** payment of any costs, charges or expenses required to be incurred by the **Insured** pursuant to any contractual obligation to a customer or client, if such obligation does not otherwise constitute covered **Loss** under the policy;

    c.      based upon, arising out of, or in any way involving any intentional **Wrongful Act** committed with the intent to cause damage and committed prior to the effective date of the policy;

    d.      that would be excluded from covered **Loss** under the policy pursuant to the **GENERAL POLICY EXCLUSIONS** of the General Terms and Conditions or the **SPECIAL EXCLUSIONS** of the Coverage Part indicated above.

III.    Section **IV. LIMIT OF LIABILITY/RETENTION/PRESUMPTIVE INDEMNIFICATION** of the General Terms and Conditions is amended by the addition of the following:

- $1,000,000 be the maximum aggregate Limit of Liability of the Insurer under the Cost of Corrections Liability Insuring Agreement in connection with any monetary demand made to the Insurer arising from a covered **Wrongful Act**. The Insurer's obligation under this Insuring Agreement shall be deemed completely fulfilled and extinguished if the Limit of Liability is exhausted by payment of damages, regardless of any other applicable remaining Limit of Liability.

- There is no additional Limit of Liability provided for the coverage provided by the Cost of Corrections Liability Insuring Agreement. Such Limit of Liability set forth above is a sublimit of the policy's maximum aggregate Limit of Liability for all **Loss** set forth in Item 6.a. of the Declarations. As such, any payments

CNA71767XX (11-12)
Page 1
Continental Casualty Company
Insured Name: Standard General L.P.

Policy No:   425207388
Endorsement No:   18
Effective Date:   09/01/2014

© CNA  All Rights Reserved.



made under the coverage provided by the Cost of Corrections Liability Insuring Agreement shall further reduce the Limit of Liability provided by the policy.

- Subject to the aggregate Limit of Liability for the Cost of Corrections Liability Insuring Agreement and the policy aggregate Limit of Liability:

    a.   100% of the applicable limit of liability in excess of the retention set forth in paragraph **IV.** below shall be available to the **Insureds** if the **Insureds** notify the Insurer within seven business day after the General Counsel, Risk Manager or Chief Compliance Officer of the **Insured** first discovers the **Wrongful Act**; or

    b.   50% of the applicable limit of liability in excess of the retention set forth in paragraph **IV.** below shall be available to the **Insureds** if the **Insureds** notify the Insurer after the time specified in subparagraph a. above, but before 30 days have elapsed since the discovery of the **Wrongful Act**; or

    c.   0% of the applicable limit of liability in excess of the retention set forth in paragraph **IV.** below shall be available to the **Insureds** if the **Insureds** notify the Insurer after 30 days have elapsed since the discovery of the **Wrongful Act**.

**IV.**   Paragraph 2. **Retention** of Section **IV. LIMIT OF LIABILITY/RETENTION/PRESUMPTIVE INDEMNIFICATION** of the General Terms and Conditions is amended by the addition of the following:

The retention for the coverage provided under the Cost of Corrections Liability Insuring Agreement shall be $350,000 and the Insurer agrees to reimburse the **Insured** for damages, in excess of the applicable retention, that the Insurer has determined would subsequently result in a covered **Loss**. Furthermore, the **Insureds** shall bear uninsured and be at their own risk for 0% of all such damages covered under such Insuring Agreement. The Insurer's liability shall apply only to the remaining percentage of all such damages.

**V.**   Solely with respect to the coverage provided by this endorsement, Section **VI. NOTICE OF CLAIM/CIRCUMSTANCE AND INTERRELATED CLAIM CLAUSE** of the General Terms and Conditions is amended by the addition of the following:

- Any request made by the **Insureds** to the Insurer to pay damages under the coverage provided by the Cost of Corrections Liability Insuring Agreement shall be given to the Insurer in writing. Any such request to the Insurer under such Insuring Agreement shall be delivered to:

    Claims Manager
    CNA Global Specialty Lines
    P.O. Box 8317
    Chicago, IL 60680-8317
    Email address: CAIntake@cna.com
    Fax Number: 866-773-7504

    a.   Such notice shall include:

        i.    the names of the potential claimants and a description of the specific **Wrongful Act** which forms the basis of a potential **Claim**;

        ii.   the consequences which have resulted and may result from such specific **Wrongful Act**;

        iii.  the nature and amount of the damages arising from such specific **Wrongful Act**; and

        iv.   the circumstances by which the **Insureds** first became aware of the specific **Wrongful Act**.

---

CNA71767XX (11-12)
Page 2
Continental Casualty Company
Insured Name: Standard General L.P.

Policy No:   425207388
Endorsement No:   18
Effective Date:   09/01/2014

© CNA  All Rights Reserved.



b.   Such notice shall also include any action taken or being contemplated by the **Insureds** to minimize any damage regarding the **Wrongful Act** which is the basis of the monetary demand for damages. Any such action shall not prejudice the right of the **Insureds** to recover any monies under this Insuring Agreement unless taken in contravention of the Insurer's directions.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.



**AMEND DEFINITION OF HEDGE FUND TO INCLUDE AFFILIATED FUNDS ENDORSEMENT**

In consideration of the premium paid for this Policy, it is understood and agreed that the General Terms and Conditions, the Section entitled **DEFINITIONS**, the definition of **Hedge Fund** is deleted in its entirety and replaced with the following:

**Hedge Fund** means any hedge fund named in the Schedule of **Hedge Funds** Endorsement to the policy and:

1. its entity general partner or entity managing general partner if organized as a partnership;
2. its entity managing member if organized as a limited liability company;
3. affiliated parallel funds, master funds, feeder funds, blocker funds, special purpose entities, limited purpose entities, investment holding companies or other entities, but only if such funds or entities are under **Management Control** of the **Insured**; and

any of the foregoing organizations as a debtor-in-possession under United States bankruptcy law or an equivalent status of the law of any other country.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

CNA75866XX (8-13)
Page 1
Continental Casualty Company
Insured Name: Standard General L.P.

Policy No:   425207388
Endorsement No:   19
Effective Date:

© CNA  All Rights Reserved.



## AMEND PRIOR NOTICE EXCLUSION

In consideration of the premium paid, it is understood and agreed that the **General Terms and Conditions**, the section entitled **GENERAL POLICY EXCLUSIONS**, the exclusion entitled **Prior Notice** is deleted in its entirety and replaced with the following:

> based upon or arising out of any **Wrongful Act** or any matter, fact, circumstance, situation, transaction, or event which has been the subject of any notice given by an **Insured** and accepted by the Insurer under any policy of which this policy is a direct or indirect renewal or replacement;

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

CNA76734XX (10-13)
Page 1
Continental Casualty Company
Insured Name: Standard General L.P.

Policy No:   425207388
Endorsement No:   20
Effective Date:

© CNA  All Rights Reserved.