# EXHIBIT B

THE HARTFORD:
UNIVERSAL EXCESS SIMPLIFIED
DECLARATIONS

**Policy Number** 10 DC 0286261-14

HARTFORD ACCIDENT & INDEMNITY
HARTFORD PLAZA, HARTFORD, CT 06115
a stock insurance company, herein called
the Underwriter

NOTICE: THESE POLICY FORMS AND THE
RATES ARE EXEMPT FROM
THE FILING REQUIREMENTS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.
HOWEVER, THE FORMS AND RATES MUST
MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

NOTICE: THIS IS A CLAIMS MADE POLICY. EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ACTS COVERED BY UNDERLYING INSURANCE (ITEM D.) FOR WHICH CLAIMS ARE FIRST MADE AGAINST THE INSURED(S) WHILE THE POLICY IS IN FORCE. ANY DEFENSE COSTS AND OTHER CLAIM EXPENSE COVERED UNDER THE POLICY IS PART OF AND NOT IN ADDITION TO THE LIMIT OF LIABILITY. <u>PLEASE READ AND REVIEW THE POLICY CAREFULLY.</u>

## DECLARATIONS

**ITEM A. Name of Insured and Address:**
STANDARD GENERAL L.P.
767 FIFTH AVENUE
12TH FLOOR
NEW YORK, NY 10153

**ITEM B. Policy Period:** From 12:01 a.m. on   9/01/14   To 12:01 a.m. on   9/01/15
(Standard Time at the address stated in Item A)

**ITEM C. LIMIT OF LIABILITY: $**   5,000,000      Aggregate each Policy Period

**ITEM D. SCHEDULE OF UNDERLYING INSURANCE:**

(1)   Primary Policy:

   Company:   CONTINENTAL CASUALTY COMPANY

   Policy Number:   425207388

   Limit of Liability: $   5,000,000

(2)   Underlying Excess Policy(ies):   N/A

**ITEM E. ADDRESS FOR CLAIMS-RELATED NOTICES:**
The Hartford - Financial Products Claims Dept.
via mail:  277 Park Ave., 15th Floor
New York, New York 10172
via email: HFPClaims@thehartford.com
via fax:   917-464-6000

**ITEM F. ADDRESS FOR ALL OTHER NOTICES:**
The Hartford
via mail:  277 Park Ave., 15th Floor
New York, New York 10172
via email: HFPExpress@thehartford.com
via fax:   866-586-4550

**ITEM G. EXTENDED REPORTING PERIOD:**

(1) Additional Premium:  150% OF THE ANNUAL PREMIUM

(2) Additional Period:   12 MONTHS

**ITEM H. PREMIUM:**   $    65,599.00

_Thomas C. Tucker_
Authorized Representative

10/15/14
Date

US 00 H002 00 0708
2-13000

© 2008, The Hartford

Page 1 of 1

ENDORSEMENT

GU 207 (6-78)

This endorsement, effective on        9/01/14

Policy No.   10 DC 0286261-14        of the

Issued to    STANDARD GENERAL L.P.

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

at 12:01 A.M. standard time, forms a part of

HARTFORD ACCIDENT & INDEMNITY

André A. Napoli, President

SCHEDULE OF FORMS AND ENDORSEMENTS

|    |            |       |                                                                                      |
|----|------------|-------|--------------------------------------------------------------------------------------|
|    | HR00H04900 | 05/09 | IN WITNESS PAGE                                                                      |
| 1  | HG00H00901 | 07/08 | AMEND MAILING ADDRESS FOR NOTICE ENDORSEMENT                                          |
| 2  | HG00H06801 | 02/12 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM                                        |
| 3  | US00H04400 | 07/08 | STATE AMENDATORY INCONSISTENCY ENDORSEMENT                                            |
| 4  | US00H08500 | 04/09 | EXCESS PRIOR OR PENDING LITIGATION EXCLUSION                                          |
| 5  | US00H11700 | 03/12 | RECOGNIZE PAYMENT OF LOSS BY INSURER, DIC INSURER, INSURED OR ANY OTHER NATURAL PERSON |
| 6  | US00H11900 | 03/13 | AMEND PARTICIPATION, COOPERATION, NOTICE AND CANCELLATION – FAILURE TO COOPERATE      |
| 7  | US00M06100 | 10/10 | AMEND EXHAUSTION OR REDUCTION AND MAINTENANCE                                         |
| 8  | US00M09200 | 08/11 | EXCESS FOLLOWED POLICY ENDORSEMENT EXHAUSTION OF UNDERLYING INSURANCE                 |
|    | HG31H00104 | 02/12 | CONFIRMATION OF ACCEPTANCE OF CERTIFIED ACTS OF TERRORISM NEW YORK                    |
| 9  | US31H00401 | 06/11 | NEW YORK AMENDATORY ENDORSEMENT                                                       |
| 10 | US31H09300 | 08/09 | NEW YORK UNIVERSAL EXCESS SIMPLIFIED POLICY ADDENDUM TO THE DECLARATIONS AND APPLICATION |
| 11 | US31H11100 | 05/11 | NEW YORK CANCELLATION AND NONRENEWAL ENDORSEMENT                                      |
|    | HR00H09300 | 02/07 | PRODUCER COMPENSATION NOTICE                                                          |

# THE HARTFORD UNIVERSAL EXCESS™ POLICY

In consideration of the payment of the Premium and in reliance upon any application, materials or information made available by or on behalf of the Insured(s) to the Underwriters in connection with the application, the Underwriters and the Insured(s) agree as follows:

**THIS SIMPLIFIED FORM AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

## I.   INSURING AGREEMENT – FOLLOW FORM COVERAGE
This policy shall provide coverage in excess of the total limits of liability and any retention/deductible of the Underlying Insurance.  Coverage shall follow form to the same terms, conditions and limitations of the new in the Primary Policy or any Underlying Excess Policy(ies) as of the inception of this policy, except as otherwise provided herein.  In no event shall this policy grant broader coverage than is provided by either the Primary Policy or any one of the Underlying Excess Policy(ies).

## II.   UNDERLYING INSURANCE
A. *EXHAUSTION OR REDUCTION*:  It is expressly agreed that liability for any Loss shall attach to the Underwriters only after either: (i) the insurer(s) of the Primary Policy and Underlying Excess Policy(ies) shall have paid the full amount of their respective liability for such Loss; or (ii) the Insured(s) shall have paid, in the applicable legal currency, any portion of such Loss that, together with any payments by such insurer(s) above, equals the limits of liability of the Underlying Insurance.  The Underwriters shall then be liable to pay additional amounts of Loss up to the Limit of Liability.  In the event such payments described above exhaust the Underlying Insurance but not this policy, then this policy shall continue as primary insurance, subject to its terms, conditions and limitations, and shall apply a retention/deductible as set forth in the Primary Policy to any subsequent Claim.   In the event such payments described above only reduce the Underlying Insurance, then this policy shall continue as excess of the reduced Underlying Insurance.  In no way shall any payments by the Insured(s) constitute a waiver of any terms, conditions or limitations of the Underlying Insurance or of this policy.

B. *SUB-LIMITS*:  If the Primary Policy provides coverage that is subject to a sub-limit of liability, then this policy shall not apply to any Claim that is subject to such sub-limit.   However, any such coverage shall be recognized solely for the purposes of reducing or exhausting the Underlying Insurance.

C. *MAINTENANCE*:  The Insured(s) agree that the Underlying Insurance shall be maintained in full effect while this policy is in force.  If the Insured(s) fail to do so, the Underwriters shall only be liable to the extent it would have been liable had the Insured(s) maintained such insurance and the Insured(s) shall be self-insured for the amount of the Underlying Insurance which is not maintained.

## III.   PARTICIPATION, COOPERATION, NOTICE AND CANCELLATION
The Underwriters may, at their sole option, elect to participate in the investigation, settlement or defense of any Claim even if the Underlying Insurance has not been exhausted. The Insured(s) shall give the Underwriters all information and cooperation as the Underwriters may reasonably require.   All notices shall be given to the Underwriters at the applicable address set forth in either Item E. or Item F. of the Declarations. This policy may only be cancelled in accordance with all appropriate notice provisions of the Underlying Insurance. This policy may only be cancelled in accordance with the appropriate cancellation provisions of the Underlying Insurance.

## IV.   DEFINITIONS
1. Insured(s) shall mean those individuals and/or entities insured under the Underlying Insurance.
2. Primary Policy means the policy in Item D.(1) of the Declarations.
3. Underlying Excess Policy(ies) means the policy(ies) in Item D.(2) of the Declarations.
4. Underlying Insurance means all those policies in Item D. of the Declarations.
5. Underwriters, Premium, Policy Period and Limit of Liability shall have the meanings set forth in the Declarations.
6. All other capitalized terms shall have the meanings set forth in the Underlying Insurance.

## V.   EXTENDED REPORTING PERIOD

If the Insured(s) elect and are granted an extended reporting period under all of the Underlying Insurance, then the Insured(s), by meeting the following requirements, may also elect an extended reporting period under this policy. The requirements of this policy are: (i) satisfying the same conditions as set forth in the Underlying Insurance; and (ii) paying the additional premium set forth in Item G.(1) of the Declarations. Such extended reporting period shall be for the period of time set forth in Item G.(2) of the Declarations.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

IN WITNESS WHEREOF, the Company has caused this policy/bond to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY**
HOME OFFICE – HARTFORD, CONNECTICUT
ADMINISTRATIVE OFFICES - HARTFORD, CONNECTICUT
(A STOCK INSURANCE COMPANY MEMBER OF THE HARTFORD)

Terence Shields, Secretary

André A. Napoli, President

HR 00 H049 00 0509
        10 DC 0286261-14    9/01/14    2-13000

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**This endorsement, effective 12:01 am,**       9/01/14
**of policy number**       10 DC 0286261-14

**issued to:**       STANDARD GENERAL L.P.

**by:**       HARTFORD ACCIDENT & INDEMNITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMEND MAILING ADDRESS FOR NOTICE ENDORSEMENT

**I.** **Notice of Claim or Wrongful Act**

    A. A notice of any **Claim** or **Wrongful Act** shall be given in writing to the following:

        *Via mail:*                    The Hartford

                                   Claims Department

                                   Hartford Financial Products

                                   277 Park Avenue, 15th Floor

                                   New York, New York 10172

                                        or

        *Via email:*                   HFPClaims@thehartford.com

                                        or

        *Via Facsimile:*                (917) 464-6000

    B. Where it is stated in the policy or declarations page that a notice of any **Claim** or **Wrongful Act** shall be given in writing to The Hartford, Hartford Plaza, Hartford CT 06115, it shall be deleted and replaced with the following:

    Notice of any **Claim** or **Wrongful Act** shall be given in writing to the following:

        *Via mail:*                    The Hartford

                                     Claims Department

                                   Hartford Financial Products

                                   277 Park Avenue, 15th Floor

                                   New York, New York 10172

                                        or

        *Via email:*                   HFPClaims@thehartford.com

                                        or

        *Via Facsimile:* (917) 464-6000

**II.** **All Other Notices**

    A. All notices other than a notice of **Claim** or **Wrongful Act** shall be given in writing to the following:

                                   The Hartford

                                   Product Services

                                   Hartford Financial Products

                                   277 Park Avenue, 15th Floor

                                   New York, New York 10172

**ENDORSEMENT NO:**    1

B.   With the exception of notice of a **Claim** or **Wrongful Act**, where it is stated in the policy or declarations page that a notice shall be given in writing to The Hartford, Hartford Plaza, Hartford CT 06115 shall be deleted and replaced with the following:

All notices other than a notice of **Claim** or **Wrongful Act** shall be given in writing to the following:

The Hartford

Product Services

Hartford Financial Products

277  Park Avenue, 15th Floor

New York, New York 10172

All other terms and conditions remain unchanged.

Juan Andrade, President & COO

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

This endorsement, effective 12:01 am,     9/01/14
of policy number    10 DC 0286261-14

issued to:        STANDARD GENERAL L.P.

by:               HARTFORD ACCIDENT & INDEMNITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under all lines of insurance in this policy subject to the Terrorism Risk Insurance Act.

### A. Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Department of the Treasury will reimburse insurers for 85% of that portion of insured losses attributable to "certified acts of terrorism" that exceed the applicable insurer deductible. However, if aggregate insured losses under the Terrorism Risk Insurance Act, as amended (TRIA), exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of such losses that exceeds $100 billion.  The United States government has not charged any premium for their participation in covering terrorism losses.

### B. Cap On Certified Terrorism Losses

A "certified act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism under TRIA. The criteria contained in TRIA, for a "certified act of terrorism" include the following:

1.    The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

2.    The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of an United States mission; and

3.    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to "certified acts of terrorism" under TRIA, exceeds $100 billion in a Program Year (January 1 through December 31) and we have met, or will meet, our insurer deductible under TRIA, we shall not be liable for the payment of any portion of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses  may be reduced on a pro rata  basis in accordance with procedures established by the  Treasury,, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with the Treasury's procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

### C. Application Of Other Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omissions of a terrorism exclusion, or inclusion of coverage for terrorism, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion, War Exclusion or the War And Military Action Exclusion.


All other terms and conditions remain unchanged.

(Includes copyrighted material of the Insurance Services Office, Inc., with its permission.)

2-13000

**This endorsement, effective 12:01 am,**    9/01/14
**of policy number**    10 DC 0286261-14

**issued to:**    STANDARD GENERAL L.P.

**by:**    HARTFORD ACCIDENT & INDEMNITY

> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## STATE AMENDATORY INCONSISTENCY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**THE HARTFORD UNIVERSAL EXCESS$^{sm}$ SIMPLIFIED POLICY**

The policy is amended by the addition of the following:

State Amendatory Inconsistency

In the event that there is an inconsistency between the terms and conditions of a state amendatory endorsement attached to this policy and any term or condition of this policy, then it is understood and agreed that, where permitted by law, the Underwriter shall apply those terms and conditions of either the state amendatory endorsement or the policy which are more favorable to the Insured.

All other terms and conditions remain unchanged.

*[signature]*

David Zwiener, President

© 2008, The Hartford

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

This endorsement, effective 12:01 am,        9/01/14
of policy number        10 DC 0286261-14

**issued to:**          STANDARD GENERAL L.P.

**by:**                 HARTFORD ACCIDENT & INDEMNITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCESS PRIOR OR PENDING LITIGATION EXCLUSION

This endorsement modifies insurance provided under:

**THE HARTFORD UNIVERSAL EXCESS$^{sm}$ SIMPLIFIED POLICY**

1.  In addition to any exclusions made part of the Underlying Insurance, the following exclusion shall apply to this policy:

    With respect to the Limit of Liability in ITEM C of the Declaration, Underwriters shall not be liable to make any payment for Loss in connection with any Claim against any Insured(s):

    A.  arising from any litigation, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against any Insured(s), occurring prior to, or pending as of the relevant Prior or Pending Litigation Date, as stated below, of which the Insured(s) had received notice or otherwise had knowledge as of such date; or

    B.  arising from any subsequent litigation, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against the Insured(s) arising from, or based on substantially the same matters as alleged in the pleadings of such prior or pending litigations, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against the Insured(s) as referenced in A. above; or

    C.  arising from any act(s) of any Insured(s) which gave rise to such prior or pending litigation, claims, demands, arbitration, legal or quasi-legal proceedings, decrees or judgments against the Insured(s) as referenced in A. above.

2.  Prior or Pending Litigation Date shall be: _____9/01/14_____.

All other terms and conditions remain unchanged.

Neal S. Wolin, President & COO

**This endorsement, effective 12:01 am,**    9/01/14
**of policy number**     10 DC 0286261-14

**issued to:**     STANDARD GENERAL L.P.

**by:**     HARTFORD ACCIDENT & INDEMNITY

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## RECOGNIZE PAYMENT OF LOSS BY INSURER, DIC INSURER, INSURED OR ANY OTHER NATURAL PERSON OR ENTITY

This endorsement modifies insurance provided under:

**THE HARTFORD UNIVERSAL EXCESS℠ SIMPLIFIED POLICY**

Section **II. UNDERLYING INSURANCE**, A., is deleted and replaced by the following:

A.   *EXHAUSTION OR REDUCTION*:  It is expressly agreed that liability for any Loss shall attach to the Underwriters only after either: (i) the insurer(s) of the Primary Policy and Underlying Excess Policy(ies) shall have paid the full amount of their respective liability for such Loss; or (ii) a DIC Insurer, the Insured(s), or any other natural person or entity shall have paid, in the applicable legal currency, any portion of such Loss that, together with payments by such insurer(s) above, equals the limits of liability of the Underlying Insurance. The Underwriters shall then be liable to pay additional amounts of Loss up to the Limit of Liability. In the event such payments described above exhaust the Underlying Insurance but not this policy, then this policy shall continue as primary insurance, subject to its terms, conditions and limitations, and shall apply a retention/deductible as set forth in the Primary Policy to any subsequent Claim. In the event such payments described above only reduce the Underlying Insurance, then this policy shall continue as excess of the reduced Underlying Insurance. In no way shall any payments by a DIC Insurer or the Insured(s) constitute a waiver of any terms, conditions or limitations of the Underlying Insurance or of this policy.

Section **IV. DEFINITIONS**, is amended to add the following:

DIC Insurer shall mean an insurer who drops down to pay Loss pursuant to a drop-down difference-in-conditions policy written excess of this policy. The policy written by the DIC Insurer is not part of the Underlying Insurance.

All other terms and conditions remain unchanged.

*André A. Napoli*, President

© 2012, The Hartford

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

This endorsement, effective 12:01 am,     9/01/14
of policy number     10 DC 0286261-14

issued to:     STANDARD GENERAL L.P.

by:     HARTFORD ACCIDENT & INDEMNITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMEND PARTICIPATION, COOPERATION, NOTICE AND CANCELLATION –FAILURE TO COOPERATE

This endorsement modifies insurance provided under the following:

**THE HARTFORD UNIVERSAL EXCESS™ SIMPLIFIED POLICY**

Section **III. PARTICIPATION, COOPERATION, NOTICE AND CANCELLATION** is deleted and replaced by the following:

The Underwriters may, at their sole option, elect to participate in the investigation, settlement or defense of any Claim even if the Underlying Insurance has not been exhausted. The Insured(s) shall give the Underwriters all information and cooperation as the Underwriters may reasonably require; provided, however, that the failure of any natural person insured to give the Underwriters all information and cooperate shall not impair the coverage of any other natural person insured who is complying herewith. All notices shall be given to the Underwriters at the applicable address set forth in either Item E. or Item F. of the Declarations and in accordance with all appropriate notice provisions of the Underlying Insurance. This policy may only be cancelled in accordance with the appropriate cancellation provisions of the Underlying Insurance.

All other terms and conditions remain unchanged.

André A. Napoli, President

US 00 H119 00 0313           © 2013, The Hartford           Page 1 of 1
2-13000

NOTICE: THESE POLICY FORMS AND THE
APPLICABLE RATES ARE EXEMPT FROM
THE FILING REQUIREMENTS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.
HOWEVER, THE FORMS AND RATES MUST
MEET THE MINIMUM STANDARDS OF THE NEW
YORK INSURANCE LAW AND REGULATIONS.

**This endorsement, effective 12:01 am,**      9/01/14
**of policy number**      10 DC 0286261-14

**issued to:**      STANDARD GENERAL L.P.

**by:**      HARTFORD ACCIDENT & INDEMNITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMEND EXHAUSTION OR REDUCTION AND MAINTENANCE

This endorsement modifies insurance provided under:

**THE HARTFORD UNIVERSAL EXCESS<sup>sm</sup> SIMPLIFIED POLICY**

Section **II. UNDERLYING INSURANCE**, paragraphs A. and C., are deleted and replaced by the following:

A.  *EXHAUSTION OR REDUCTION*:  It is expressly agreed that liability for any Loss shall attach to the Underwriters only after either: (i) the insurer(s) of the Primary Policy shall have paid the full amount of their respective liability for such Loss; or (ii) the Insured(s) or any other natural person or entity shall have paid, in the applicable legal currency, any portion of such Loss that, together with any payments by such insurer(s) above, equals the limits of liability of the Underlying Insurance. The Underwriters shall then be liable to pay additional amounts of Loss up to the Limit of Liability. In the event such payments described above exhaust the Underlying Insurance but not this policy, then this policy shall continue as primary insurance, subject to its terms, conditions and limitations, and shall apply a retention/deductible as set forth in the Primary Policy to any subsequent Claim. In the event such payments described above only reduce the Underlying Insurance, then this policy shall continue as excess of the reduced Underlying Insurance. In no way shall any payments by the Insured(s) or any other natural person or entity constitute a waiver of any terms, conditions or limitations of the Underlying Insurance or of this policy.

C.  *MAINTENANCE:*  The Insured(s) agree that the Underlying Insurance shall be maintained in full effect while this policy is in force. If the Insured(s) fail to do so, the Underwriters shall only be liable to the extent it would have been liable had the Insured(s) maintained such insurance.

All other terms and conditions remain unchanged.

Juan Andrade, President & COO

This endorsement, effective 12:01 am,    9/01/14
of policy number    10 DC 0286261-14

issued to:    STANDARD GENERAL L.P.

by:    HARTFORD ACCIDENT & INDEMNITY

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCESS FOLLOWED POLICY ENDORSEMENT EXHAUSTION OF UNDERLYING INSURANCE

## DIFFERENCE IN CONDITION

## RECOGNIZE PAYMENT OF LOSS BY INSURED OR UNDERYLYING DIC INSURER

This endorsement modifies insurance provided under:

**THE HARTFORD UNIVERSAL EXCESS<sup>sm</sup> SIMPLIFIED POLICY**

I.    Section **I. INSURING AGREEMENT – FOLLOW FORM COVERAGE**, is deleted and replaced with the following:

    **I.**    **INSURING AGREEMENT – FOLLOW FORM COVERAGE**

        This policy shall provide coverage in excess of the total limits of liability and any retention/deductible under all Underlying Insurance, including the Followed Policy, as set forth in Item D of the Declarations. Coverage shall follow form to the same terms, conditions, and limitations as are contained in or as may be added to the Followed Policy. In no event shall this policy grant broader coverage than is provided by the Followed Policy.

II.    Section **II. UNDERLYING INSURANCE**, A. *EXHAUSTION OR REDUCTION* is amended by the addition of  the following:

        It is also expressly agreed that liability for any Loss shall attach to the Underwriters:

        (i)    if and to the extent the insurer for the Followed Policy or any other Underlying DIC Insurer drops down pursuant to the difference-in-conditions ("DIC") provision in the Followed Policy, in which case this Policy shall also drop down excess of such insurance provided by the respective Underlying DIC Insurer; and;

        (ii)    if and to the extent any Underlying DIC Insurer does not pay Loss, in which case this Policy shall drop down and pay such Loss if and to the extent such drop down is required pursuant to the DIC provision in the Followed Policy, subject to this Policy remaining excess of such insurance provided by the respective Underlying DIC Insurer which pays such Loss.

III.    Section **II. UNDERLYING INSURANCE**, B. and C. are deleted and replaced with the following:

    B.    *SUB - LIMITS:* If the Primary Policy contains a specific grant of coverage that is subject to a sub-limit of liability, then this policy shall not apply to any Claim that is subject to such sub-limit. However, any such coverage shall be recognized solely for purposes of reducing or exhausting the Underlying Insurance, including the Followed Policy.

ENDORSEMENT NO:     8

C.   *MAINTENANCE*:  The Insured(s) agree that the Underlying Insurance, including the Followed Policy, shall be maintained in full effect while this policy is in force.  If the Insured(s) fail to do so, the Underwriters shall only be liable to the extent it would have been liable had the Insured(s) maintained such insurance and the Insured(s) shall be self-insured for the amount of the Underlying Insurance which is not maintained; provided, however, if the Followed Policy continues to afford coverage regardless of the maintenance of other Primary and Underlying Excess Policies, this policy shall also continue to afford coverage.

IV.  Section **III. PARTICIPATION, COOPERATION, NOTICE AND CANCELLATION,** is deleted and replaced with the following:

The Underwriters may, at their sole option, elect to participate in the investigation, settlement or defense of any Claim even if the Underlying Insurance has not been exhausted. The Insured(s) shall give the Underwriters all information and cooperation as the Underwriters may reasonably require. All notices shall be given to the Underwriters at the applicable address set forth in either Item E. or Item F. of the Declarations and in accordance with all appropriate notice provisions of the Followed Policy. This policy may only be cancelled in accordance with the appropriate cancellation provisions of the Followed Policy.

V.   Section **IV. DEFINITIONS,** is amended to include the following:

- Followed Policy means the Underlying Excess Policy with policy number <u>425207388</u>, issued by <u>CONTINENTAL CASUALTY COMPANY</u>.

- Underlying DIC Insurer means an insurer that drops down to pay Loss pursuant to a drop-down difference in conditions policy that is part of the Underlying Insurance.

All other terms and conditions remain unchanged.

André A. Napoli, President

**Named Insured:**  STANDARD GENERAL L.P.

**Policy Number:**  10 DC 0286261-14

**Effective Date:**  9/01/14

**Insurer:**  HARTFORD ACCIDENT & INDEMNITY

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## TERRORISM RISK INSURANCE

## CONFIRMATION OF ACCEPTANCE OF CERTIFIED ACTS OF TERRORISM

## NEW YORK

We previously notified you that in accordance with the federal Terrorism Risk Insurance Act, as amended (TRIA), we must make "certified acts of terrorism" coverage available in the policies we offer.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism. The criteria contained in TRIA for "certified act of terrorism" include the following:

1.  The act results in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to TRIA; and

2.  The act results in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of an United States mission; and

3.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The United States Department of the Treasury will reimburse insurers for 85% of that portion of  insured losses attributable to certified acts of terrorism that exceeds the applicable insurer deductible. However, if aggregate insured losses under TRIA exceed $100 billion in a Program Year (January 1 through December 31) the Treasury shall  not make any payment for any portion of the amount of such losses that exceeds $100 billion. The United States government has not charged any premium for their participation in covering terrorism losses.

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a Program Year (January 1 through December 31) and we have met, or will meet, our insurer deductible under TRIA, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, your coverage for terrorism losses may be reduced on a pro rata basis in accordance with procedures established by the  Treasury, based on its estimates of aggregate industry losses and our estimate that we will exceed our insurer deductible. In accordance with the Treasury's procedures, amounts paid for losses may be subject to further adjustments based on differences between actual losses and estimates.

At that time we advised you that you will not be required to pay a premium for "certified acts of terrorism" coverage at this time. As a result of our notification, you have accepted "certified acts of terrorism" coverage. If, upon renewal of your policy, a premium is going to be charged for "certified acts of terrorism" coverage, we will provide you with notification of what that premium will be.

This endorsement, effective 12:01 am,        9/01/14
of policy number        10 DC 0286261-14

issued to:        STANDARD GENERAL L.P.

by:        HARTFORD ACCIDENT & INDEMNITY

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEW YORK AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**THE HARTFORD UNIVERSAL EXCESS SIMPLIFIED<sup>SM</sup> POLICY**

I.    **CLAIMS MADE NOTIFICATION:**

The following Notice is added to the policy.

THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY, AND CONTACT YOUR AGENT OR BROKER IF YOU HAVE ANY QUESTIONS. EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ACTS COVERED BY UNDERLYING INSURANCE AS STATED UNDER ITEM D. IN THE DECLARATIONS PAGE FOR THIS POLICY FOR WHICH CLAIMS ARE FIRST MADE AGAINST THE INSURED(S) WHILE THE POLICY IS IN FORCE. ANY DEFENSE COSTS AND OTHER CLAIM EXPENSES COVERED UNDER THIS POLICY IS PART OF AND NOT IN ADDITION TO THE LIMIT OF LIABILITY.

THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ACTS COVERED BY THE UNDERLYING INSURANCE FOR WHICH CLAIMS ARE FIRST MADE AGAINST THE INSUREDS WHILE THE POLICY IS IN FORCE AND WHICH ARE REPORTED TO THE UNDERWRITERS, DURING THE POLICY PERIOD, ANY SUBSEQUENT RENEWAL, OR ANY EXTENDED REPORTING PERIOD. THIS POLICY PROVIDES NO COVERAGE FOR CLAIMS ARISING OUT OF ACTS WHICH OCCURRED PRIOR TO ANY APPLICABLE RETROACTIVE DATE OR AFTER THE POLICY PERIOD.

UPON TERMINATION OF COVERAGE, A SIXTY (60) DAY AUTOMATIC EXTENDED REPORTING PERIOD WILL BE PROVIDED. THE INSURED WILL HAVE THE OPTION TO PURCHASE AN OPTIONAL EXTENDED REPORTING PERIOD IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE POLICY. THE PREMIUM FOR AND DURATION OF THE OPTIONAL EXTENDED REPORTING PERIOD SHALL BE STATED ON THE DECLARATIONS PAGE OF THIS POLICY.

COVERAGE GAPS MAY ARISE AT THE EXPIRATION OF THE POLICY, AUTOMATIC EXTENDED REPORTING PERIOD OR OPTIONAL EXTENDED REPORTING PERIOD. DURING THE FIRST SEVERAL YEARS OF THE CLAIMS MADE RELATIONSHIP, CLAIMS-MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES, AND THE INSURED CAN EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF THE OVERALL RATE LEVEL INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

THE POLICY PROVIDES NO COVERAGE FOR CLAIMS ARISING OUT OF ACTS WHICH TOOK PLACE PRIOR TO THE RETROACTIVE DATE.

THIS POLICY IS WRITTEN ON A DEFENSE WITHIN THE LIMITS BASIS. THE LIMIT OF LIABILITY AVAILABLE TO PAY LOSS, INCLUDING JUDGMENT OR SETTLEMENT AMOUNTS, SHALL BE REDUCED OR MAY BE COMPLETELY EXHAUSTED BY AMOUNTS INCURRED FOR DEFENSE COSTS AND OTHER CLAIMS EXPENSES. ONCE THE LIMIT OF LIABILITY IS EXHAUSTED, THE UNDERWRITERS SHALL NOT BE LIABLE FOR DEFENSE COSTS, OTHER CLAIM EXPENSES OR FOR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT.

II. Section III., **PARTICIPATION, COOPERATION, NOTICE AND CANCELLATION,** is amended to include the following:

If this policy is issued by an agent acting as an agent with regard to the issuance of this policy, notice given by or on behalf of the Insured, or written notice by or on behalf of the injured person or any other claimant, to any agent, of the Underwriter in New York State with particulars sufficient to identify the Insured, shall be deemed notice to the Underwriter.

III. Section **IV., DEFINITIONS,** is amended to include the following:

Termination of Coverage, whether undertaken by the Underwriters or the Insured at any time, means:

(1) cancellation or nonrenewal of the policy; or

(2) decrease in limits, reduction of coverage, increased deductible or retention, new exclusion, or any other change in coverage less favorable to the Insured.

IV. Section **V., EXTENDED REPORTING PERIOD,** is deleted and replaced with the following:

Automatic Sixty (60) Day Extended Reporting Period

Upon Termination of Coverage, the insurance afforded by the policy shall be extended to apply to claims first made against the Insured during the period of sixty (60) days immediately following the effective date of termination of coverage, but only with respect to acts committed prior to such date and otherwise covered by this policy. The automatic extended reporting period will not reinstate or increase the Underwriters' Limit of Liability under the policy.

Optional Extended Reporting Period

The Insured may purchase an optional extended reporting period as per the terms and conditions of this policy. The requirements of this policy are: (i) satisfying the same conditions as set forth in the Underlying Insurance; and (ii) paying the additional premium set forth in Item G.(1) of the Declarations. Such extended reporting period shall be for the period of time set forth in Item G.(2) of the Declarations.

Within thirty (30) days after Termination of Coverage, the Underwriters must advise the Insured in writing of the automatic extended reporting period coverage and the availability of, the premium for, and the importance of purchasing the optional extended reporting period coverage. For policies subject to audit, retrospective rating or experience rating, the premium for extended reporting period coverage may be quoted on an estimated basis.

Upon cancellation due to nonpayment of premium or fraud on the part of the Insured, the Underwriters shall not be required to provide a premium quotation unless requested by the Insured.

The Underwriters do not have to offer an extended reporting period for decrease in limits, reduction of coverage, increase in deductible or retention, the addition of a new exclusion, or any other change in coverage less favorable to the Insured, if the policy is issued or renewed to a (i) large commercial insured; or (ii) provides excess coverage of at least $1,000,000 per occurrence, where the underlying limits are at least $2,000,000 per occurrence.

To elect the optional extended reporting period, the Insured shall send a written notice of election of the optional extended reporting period to the Underwriters together with the premium therefore and any premium due under the policy. The right to elect the optional extended reporting period shall end unless the Underwriters receive such notice and premium within:

(i) sixty (60) days of the effective date of Termination of Coverage, or

(ii) thirty (30) days from the date of mailing or delivery of the written notice by the Underwriters advising the Insured of the availability to purchase the extended reporting period.

There shall be no right to elect the extended reporting period after such time as described in (i) and (ii) above.

The premium for and the length of the extended reporting period shall be that specified in the EXTENDED REPORTING PERIOD section in the Declarations of the policy.

There is no separate or additional Limit of Liability for the extended reporting period. The aggregate Limit of Liability, if any, for the extended reporting period, shall be at least equal to the amount of coverage remaining in the policy's annual aggregate Limit of Liability.

 © 2011, The Hartford

During the claims made relationship and any extended reporting period, a person employed or otherwise affiliated with the Insured and covered by the Insured's policy during such affiliation, shall continue to be covered under such policy and any extended reporting period after such affiliation as ceased for such person's covered acts or omissions during such affiliation.

A policy issued to a corporation, partnership or other entity shall provide extended reporting period coverage upon Termination of Coverage to any person covered under the policy, if:

(a) such entity has been placed in liquidation or bankruptcy or permanently ceases operations;

(b) the entity or its designated trustee does not purchase extended reporting period coverage; and

(c) such person requests the extended reporting period coverage within 120 days of the cancellation or nonrenewal of the policy.

Where the claims made relationship has continued for less than one (1) year, the above sections do not apply upon Termination of Coverage for nonpayment of premium or fraud.


All other terms and conditions remain unchanged.


André A. Napoli, President

  © 2011, The Hartford

This endorsement, effective 12:01 am,        9/01/14
of policy number        10 DC 0286261-14

issued to:        STANDARD GENERAL L.P.

by:        HARTFORD ACCIDENT & INDEMNITY

> NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEW YORK UNIVERSAL EXCESS[sm] SIMPLIFIED POLICY ADDENDUM TO THE DECLARATIONS AND APPLICATION

This endorsement modifies insurance provided under the following:

### THE HARTFORD UNIVERSAL EXCESS[SM] SIMPLIFIED POLICY

THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY, AND CONTACT YOUR AGENT OR BROKER IF YOU HAVE ANY QUESTIONS. EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ACTS COVERED BY UNDERLYING INSURANCE AS STATED UNDER ITEM D. IN THE DECLARATIONS PAGE FOR THIS POLICY FOR WHICH CLAIMS ARE FIRST MADE AGAINST THE INSURED(S) WHILE THE POLICY IS IN FORCE. ANY DEFENSE COSTS AND OTHER CLAIM EXPENSES COVERED UNDER THIS POLICY IS PART OF AND NOT IN ADDITION TO THE LIMIT OF LIABILITY.

THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ACTS COVERED BY THE UNDERLYING INSURANCE FOR WHICH CLAIMS ARE FIRST MADE AGAINST THE INSUREDS WHILE THE POLICY IS IN FORCE AND WHICH ARE REPORTED TO THE UNDERWRITER, DURING THE POLICY PERIOD, ANY SUBSEQUENT RENEWAL, OR ANY EXTENDED REPORTING PERIOD. THIS POLICY PROVIDES NO COVERAGE FOR CLAIMS ARISING OUT OF ACTS WHICH OCCURRED PRIOR TO ANY APPLICABLE RETROACTIVE DATE OR AFTER THE POLICY PERIOD.

UPON TERMINATION OF COVERAGE, A SIXTY (60) DAY AUTOMATIC EXTENDED REPORTING PERIOD WILL BE PROVIDED. THE INSURED WILL HAVE THE OPTION TO PURCHASE AN OPTIONAL EXTENDED REPORTING PERIOD IN ACCORDANCE WITH THE TERMS AND CONDITIONS OF THE POLICY. THE PREMIUM FOR AND DURATION OF THE OPTIONAL EXTENDED REPORTING PERIOD SHALL BE STATED ON THE DECLARATIONS PAGE OF THIS POLICY.

COVERAGE GAPS MAY ARISE AT THE EXPIRATION OF THE POLICY, AUTOMATIC EXTENDED REPORTING PERIOD OR OPTIONAL EXTENDED REPORTING PERIOD. DURING THE FIRST SEVERAL YEARS OF THE CLAIMS MADE RELATIONSHIP, CLAIMS-MADE RATES ARE COMPARATIVELY LOWER THAN OCCURRENCE RATES, AND THE INSURED CAN EXPECT SUBSTANTIAL ANNUAL PREMIUM INCREASES, INDEPENDENT OF THE OVERALL RATE LEVEL INCREASES, UNTIL THE CLAIMS-MADE RELATIONSHIP REACHES MATURITY. PLEASE READ AND REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

THE POLICY PROVIDES NO COVERAGE FOR CLAIMS ARISING OUT OF ACTS WHICH TOOK PLACE PRIOR TO THE RETROACTIVE DATE.

THIS POLICY IS WRITTEN ON A DEFENSE WITHIN THE LIMITS BASIS. THE LIMIT OF LIABILITY AVAILABLE TO PAY LOSS, INCLUDING JUDGMENT OR SETTLEMENT AMOUNTS, SHALL BE REDUCED OR MAY BE COMPLETELY EXHAUSTED BY AMOUNTS INCURRED FOR DEFENSE COSTS AND OTHER CLAIMS EXPENSES. ONCE THE LIMIT OF LIABILITY IS EXHAUSTED, THE UNDERWRITER SHALL NOT BE LIABLE FOR DEFENSE COSTS, OTHER CLAIM EXPENSES OR FOR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

This endorsement, effective 12:01 am,     9/01/14
of policy number     10 DC 0286261-14

issued to:         STANDARD GENERAL L.P.

by:          HARTFORD ACCIDENT & INDEMNITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEW YORK CANCELLATION AND NONRENEWAL ENDORSEMENT

### THE HARTFORD UNIVERSAL EXCESS<sup>SM</sup> SIMPLIFIED POLICY

I.   The Cancellation provision of this Policy is deleted and replaced by the following:

NOTICE OF CANCELLATION

A.  This Policy may be canceled by the Insured by surrender of this Policy to the Underwriters or by mailing to the Underwriters written Notice of Cancellation stating when thereafter such cancellation shall be effective.

B.  This Policy may be canceled by the Underwriters only for nonpayment of premium by mailing to the Insured, and to the authorized insurance agent or broker, a written notice stating when not less than fifteen (15) days thereafter the cancellation shall be effective. If the Policy is cancelled for nonpayment of premium, the Notice of Cancellation shall inform the Insured of the amount due.

C.  Notice of Cancellation will contain the reason for cancellation and be mailed or delivered to the Insured, at the address shown on this Policy, and to the Insured's authorized agent or broker.

D.  If this Policy shall be canceled by the Insured, the Underwriters will retain the customary short rate proportion of the premium hereon. If this Policy shall be canceled by the Underwriters, the Underwriters will retain the pro rata proportion of the premium hereon. Payment or tender of any unearned premium by the Underwriters shall not be a condition of cancellation, but such payment shall be made as soon as practicable.

E.  If the Policy is cancelled for nonpayment of premium, the Notice of Cancellation shall inform the Insured of the amount due.

II.   The following provisions are added:

1.   NOTICE OF NONRENEWAL

A.  The Underwriters will mail to the Insured, and to the authorized insurance agent or broker, written notice indicating the Underwriter's intention not to renew this Policy at least thirty (30) days, yet no more than one hundred and twenty (120), days in advance of the expiration date of the Policy, for an excess liability Policy or a Policy issued to a jumbo risk; or sixty (60), yet no more than one hundred and twenty (120) days in advance of the expiration date of this Policy for all other policies.

B.  Notice of Nonrenewal shall be mailed to the Insured at the last address known to the Underwriters and to the authorized agent or broker. The Notice of Nonrenewal will contain the reason for non-renewal.

C.  In the event that the Notice of Nonrenewal is provided by the Underwriters less than the advance notice requirement as stated in paragraph A. of this section but prior to the expiration date of the Policy, coverage shall remain in effect on the same terms and conditions of the expiring policy for thirty (30) days for an excess liability Policy or a Policy issued to a jumbo risk or sixty (60) days for all other policies, beyond the date such notice is mailed or delivered to the Insured at the lower of the current rates or the prior Policy Period's rates.

D.  All of the above provisions regarding notice of cancellation or non-renewal shall not apply if the Insured, such Insured's authorized agent or broker, or another Underwriters of the Insured has mailed or delivered written notice to the Underwriters that this Policy has been replaced or is no longer desired.

2.  NOTICE OF CONDITIONAL RENEWAL

A.  The Underwriters will send a Notice of Conditional Renewal thirty (30) days for an Excess Liability Policy or a Policy issued to a jumbo risk or sixty (60) days for all other policies, but not more than one hundred and twenty (120) days prior to the expiration date of this Policy to the Insured and the Insured's agent or broker at the last address known to the Underwriters, if the Underwriters:

   1.  changes the Limits of Liability ;

   2.  changes the type of coverage under this Policy;

   3.  reduces coverage under this Policy;

   4.  increases deductible of this Policy;

   5.  adds an exclusion to this Policy; or

   6.  increases the premiums in excess of ten percent (10%) (exclusive of any premium increase generated as a result of increased exposure units or as a result of experience rating, loss rating, retrospective rating or audit), except,

   7.  that with respect to an excess liability policy, the insurer may also, consistent with regulations promulgated by the superintendent, condition its renewal upon requirements relating to the underlying coverage, in which event the conditional renewal notice shall be treated as an effective notice of nonrenewal if such requirements are not satisfied as of the later of the expiration date of the policy or sixty days after mailing or delivery of such notice .

B.  The Notice of Conditional Renewal will contain the reason(s) for conditional renewal as stated in paragraph (A) (1-6) of this Section.

C.  If the Underwriters cannot determine whether it will conditionally renew this Policy, the Underwriters will send an Alternative Notice to the Insured at the last address known to the Underwriters. The Alternative Notice will advise the Insured that as soon as possible the Underwriters will send a second notice to the Insured indicating the Underwriters's exact intention. Coverage will remain in effect under the same terms, conditions, rates as the expiring policy until sixty (60) days after the second notice, Notice of Conditional Renewal, is sent to the Insured.

D.  All of the above provisions regarding Notice of Conditional Renewal shall not apply if: (i) this policy qualifies as a hyper limits excess liability policy or (ii) the Insured, such Insured's authorized agent or broker, or another insurer of the Insured has mailed or delivered written notice to the Underwriters that this Policy has been replaced or is no longer desired.

3.   LOSS INFORMATION

Upon written request by the Insured or the Insured's authorized agent or broker, the Underwriters shall mail or deliver the following loss information covering a period of years specified by the Superintendent of Insurance by regulation or the period of time coverage has been provided by the Underwriters, whichever is less, within ten (10) days of such request:

A.   information of closed claims, including date and description of occurrence and any payments;

B.   information of open claims, including date and description of occurrence, and amounts of any  payments; and

C.   information on notice of any occurrences, including date and description of occurrence.

4.   DEFINITIONS

The following definitions are added:

A.   Hyper Limits excess liability policy means an excess liability policy of commercial risk, public entity or professional liability insurance, including a commercial umbrella policy, when written over one or more underlying liability policies issued by authorized insurers that provide with respect to the same risk coverage of at least ten million dollars in the aggregate.

B.   Jumbo Risk means a business entity that generates gross revenues exceeding one hundred million dollars annually and that develops an annual liability premium for the policy of at least five hundred thousand dollars, but shall not include any public entity or not-for-profit corporation.

All other terms and conditions remain unchanged.

André A. Napoli, President

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

THE HARTFORD

**Producer Compensation Notice**

You can review and obtain information on The Hartford's
producer compensation practices at www.thehartford.com
or at 1-800-592-5717.

F-5267-0
HR 00 H093 00 0207                    © 2007, The Hartford                    Page 1 of 1

10 DC 0286261-14    9/01/14    2-13000